STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION v. TWO WAY RADIO SERVICE, INC., APPLICANT.

(Filed 2 February, 1968.)

**1. Utilities Commission § 9—**

The findings of fact of the Utilities Commission are conclusive upon the reviewing court if supported by competent, material and substantial evidence.

**2. Same—**

The Superior Court may, in proper cases, remand the cause to the Utilities Commission for additional findings upon a question of fact to which the Commission made no finding, or the Court may reverse or remand where a finding is not supported by competent or material evidence, but the court cannot reverse the Commission for failure to find facts which the reviewing court believes it should have found.

**3. Utilities Commission § 7—**

The Utilities Commission has no statutory authority to compel a telephone company to interconnect its system of line telephones with the system of a mobile radio service.

**4. Same—**

A certificate of public convenience and necessity authorizing its holder to render telephone service grants to the holder the right to adopt new methods of telephonic communications, including a mobile radio telephone service.

**5. Same; Evidence § 3—**

Courts may take judicial notice that telephone companies habitually transmit conversations by electrical impulses without the use of wires.

**6. Same— Application for duplicate service should be denied if utility already serving area is willing and able to provide the service.**

Where a public utility has a certificate of convenience and necessity for telephone service in a certain area and is ready and able to provide such area a mobile radio service, the Utilities Commission should deny an application for a certificate of public convenience and necessity to an applicant who proposes to render substantially the same mobile radio service in the area, and the fact that the applicant proposes to offer an electronic personal paging service as an auxiliary to its mobile radio service is not a sufficient difference to justify the issuance of the certificate when it appears that the Commission can compel the established utility to install such a service when the public convenience so requires.

**7. Same—**

Neither a telephone answering nor a message relaying service is a public utility within the purview of G.S. 62-3(23) and cannot therefore be determinative upon the question of whether an applicant's proposed telephone service is substantially the same as that of the existing franchise holder.

APPEAL by the North Carolina Utilities Commission and by Concord Telephone Company from *Johnston, J.*, at the January 1967 Civil Session of STANLY.

Two Way Radio Service, Inc., hereinafter called the applicant, applied to the North Carolina Utilities Commission, hereinafter called the Commission, for the issuance to it of a certificate of public convenience and necessity permitting it to operate "as a common carrier in intrastate communications providing a mobile radio service, with interconnection with existing telephone service," its service area to be within a radius of 40 miles of its proposed base station in or near the city of Albemarle. Concord Telephone Company, hereinafter called the protestant, intervened in opposition on the ground that it holds a certificate of public convenience and necessity under which it renders telephone service in the area and is authorized to render a service similar to that sought to be rendered by the applicant. The protestant alleged that it is ready and willing to provide "adequate mobile radio service in the Albemarle area in connection with its telephone service." The protestant also denied the right of the applicant to an interconnection with the lines of the protestant. Two Way Radio of Carolina, Inc., also intervened in opposition to the grant of the application but took no part in the appeal from the Commission to the superior court or in the appeal to this Court.

The Commission conducted a hearing and, thereupon, entered its order denying the application, setting forth in its order its findings of fact and its conclusions of law. The applicant appealed to the superior court, which entered judgment reversing the order of the Commission and remanding the matter to it with direction to grant the certificate "as applied for." From that judgment the Commission and the protestant appeal to this Court.

The applicant offered evidence before the Commission tending to show the following, with reference to the nature of its proposed operation:

At its base station it will erect a radio antenna 165 feet in height. This will transmit and receive signals to and from an area within a radius of 40 miles. Subscribers to its service will have one or more of the following: A portable unit, a mobile unit installed in a vehicle, a dispatch unit installed in the subscriber's office, or a personal paging unit.

The personal paging unit, designed for carrying in the subscriber's pocket, does not enable him to transmit or receive a message but, upon a signal from the antenna at the applicant's base station, it buzzes and thereby notifies the bearer that someone wants to talk to him on his mobile unit. Its purpose, thus, is to enable the subscriber, having a mobile unit in his vehicle, to leave the vehicle and still be advised when he has an incoming call. To take the call, he must return to his mobile unit and communicate with the applicant's operator.

All of the subscribers' transmitting units transmit to the applicant's base station where the incoming signal is received and re-transmitted to the person with whom the subscriber desires to communicate. Thus, an occupant of a vehicle at the perimeter of the applicant's service area can communicate with one on the other end of its diameter, about 80 miles away. A dispatch unit enables the subscriber's office to communicate, via the applicant's antenna, with any mobile unit in any vehicle of that subscriber's fleet, and vice versa, so long as the vehicle remains within the service area. Apparently, the dispatch unit may also thus communicate with and receive communications from that subscriber's portable units not installed in vehicles. The dispatch unit can talk to mobile, or portable, units of that subscriber only. Communication may also be had, in like manner, between one mobile unit and another or between a mobile and a portable unit. All such transmitting units can also communicate with the applicant's operator, or answering service, at its base station. Every message transmitted goes from the speaking unit to the antenna at the applicant's base station and thence to the receiving unit.

At the base station, the applicant will operate 24 hour answering and delayed relay service. Thus, a subscriber, unable to reach immediately the person with whom he wishes to communicate, can leave a message which the applicant's operator will transmit when the operator can get through to the other party.

This answering or message relaying service is not a mechanically necessary element of the "mobile radio service," but is an addition thereto providing an added convenience. They are two separate services which "dovetail into each other." Likewise, the applicant did not originally contemplate an interconnection with the telephone company's system and, if permitted, the applicant will operate its proposed service whether or not interconnection is granted. Through use of the answering service available at the base station a subscriber, upon returning to his mobile unit, can call the base station and receive messages, including numbers for calls which he is to return and which have accumulated in his absence from his mobile unit.

Other witnesses for the applicant were businessmen in the Albemarle area who testified that they need and would use the proposed service, with or without interconnection with the lines of the protestant, and that no such service is now available to them.

The protestant introduced evidence to the following effect as to its present and contemplated operations:

> It holds a certificate of public convenience and necessity authorizing it to render "telephone service" in the area which includes that here in question. Its corporate charter empowers it to operate "a general telephone business" in such area and to acquire and use "such plants and exchanges equipped with necessary or desirable poles, wires, switchboards, dial equipment, and all other equipment, appliances, apparatus and things necessary or· desirable in. connection with carrying on a general telephone business," and "to operate all kinds of·machinery and appliances, and generally to perform all acts which may be deemed necessary. or expedient for the proper and successful prosecution of the objects and purposes for which the corporation is created."
>
> It now operates telephone service in the area in question, having approximately 45,000 telephones in service in all of its exchanges. It has applied for and received from the Federal Communications Commission a permit for the construction of facilities: for the rendition of "mobile telephone service in the Albemarle area." It has near Albemarle a 300 foot tower now used by it for microwave facilities. This it proposes to use as a base station for its "mobile telephone service." It has equipment on order for use in that service. It proposes to put the service into effect in the Albemarle area "as soon as it can be done."
>
> This proposed service is known as the "Improved Mobile Telephone Service." It is a two way dial service. The subscriber thereto, while in his vehicle equipped with such telephone, can dial any number he desires and can receive a call from anyone dialing his mobile number. His service through this unit will be essentially the same as that of any other telephone subscriber. Only one subscriber on the same communications channel can use it at the same time. If a communications channel allotted by the Federal Communications Commission becomes filled, the holder of such permit can apply to that commission for the allotment of another channel for that area.
>
> The protestant now has in operation a "microwave method of transmitting messages." It has personnel trained and licensed by the Federal Communications Commission to operate such system. It proposes to make this mobile service available in the area 24 hours a day.
>
> In its proposed "mobile telephone service," the protestant does not contemplate the operation by it of any answering ser-

vice or message relay service. It does not propose to operate any "personal paging" units such as are proposed by the applicant.

Upon the foregoing evidence the Commission made findings of fact, of which the following are material to this appeal:

"1. Common carrier two-way mobile radio service with a base at Albemarle is not now being provided the public.

*     *     *

"3. Certain farmers, ambulance services, vending services, florists, contractors, realtors, doctors, and other businesses or professions need and would use mobile radio service with a base point at Albemarle · whether or not such service was interconnected with land-line telephone service.

*     *     *

"5. Concord Telephone Company has heretofore been granted a certificate of public convenience and necessity by the North Carolina Utilities Commission to engage in the general telephone business and is actively engaged in the provision of general telephone service in the City of Albemarle and adjacent areas involved in the application. Concord Telephone Company is not presently offering mobile telephone service at Albemarle in Stanly County. The Company proposes to offer mobile telephone service (known as 'IMTS — Improved Mobile Telephone Service') with base point at Albemarle. It already owns a 300 foot microwave tower at Albemarle, has the necessary equipment on order, and has a construction permit granted by the Federal Communications Commission. Concord Telephone Company is otherwise financially able and willing to provide 'Improved Mobile Telephone Service' in the Albemarle and Stanly County areas.

"6. The services proposed to be offered by Applicant and by Concord Telephone Company are similar in some respects, although they are not identical. The principal differences ·in the two services are:

(a) The telephone company proposes to offer a two-way dial service whereby a subscriber may dial any number and any subscriber may dial him in his mobile unit, affording local and toll service the same as a stationary telephone in a private home or business; the subscriber to the miscellaneous common carrier's service may directly reach only the company's dispatcher through a code call. The dispatcher must then switch

or connect the subscriber to the person the subscriber wishes to reach and a two-way conversation can then be held. If the facilities of the mobile common carrier are interconnected to the land-line telephone company's facilities, the dispatcher can put the subscriber in touch with a telephone company subscriber by performing the telephoning functions for him and then making the necessary connections for a two-way conversation. If the facilities of the mobile radio common carrier are not interconnected with those of the land-line telephone company, a subscriber to the mobile radio service can reach only that company's dispatcher and, through the dispatcher, only that company's other subscribers to mobile service, in this case, a maximum of forty (40) other unites [sic]. A unit does not connote a separate subscriber; one subscriber can have several units.

(b)   The mobile radio common carrier offers a message retention service, i.e., the subscriber may leave a message for another subscriber to be retained or later relayed. In connection therewith, the mobile radio service itself or by arrangement with others, offers a telephone answering service. The telephone company does not offer message retention or a telephone answering service.

(c)   The mobile radio common carrier's rates are predicated upon a flat rate for a prescribed number of message minutes, each call counting no less than a minute. All calls above the limit are charged at a special rate per call. The telephone company proposes to offer its mobile service at a flat rate per month, without regard to the number of calls made.

(d)   The mobile radio common carrier offers a 'paging' service whereby a subscriber may be contacted by means of a tone or 'beep' or by one-way voice communication from the dispatcher to the subscriber. The telephone company does not have concrete plans for offering any form of 'paging' system.

"7.   The Applicant * * * has made arrangements with manufacturers for credit purchases of equipment, and has a site for its microwave tower available."

Upon these findings of fact, the Commission reached conclusions, of which the following are material to this appeal:

"1.   The Supreme Court of North Carolina held in STATE v. TELEGRAPH Co., 267 N.C. 257, that mobile radio common car-

riers are offering a service to the public for the transmission of messages and communications and are, therefore, public utilities within the purview of G.S. 62-3(23), are subject to certification pursuant to G.S. 62-110, and to regulation by the Utilities Commission. We, therefore, conclude that we have jurisdiction over the subject matter of the application and the service we have found Applicant proposes to offer; further, that Applicant is properly before the Commission.

"2. We conclude and hold, based on the facts established by Applicant, that the public convenience and necessity justifies or reasonably will justify, the service proposed and that the Applicant is fit, ready, willing, and able to provide such service on a continuing basis.

\*     \*     \*

"4. We conclude and hold that this Commission is without statutory authority to order Concord Telephone Company, as a land-line telephone company, or any other land-line telephone company to interconnect with a mobile radio common carrier, including Applicant. This conclusion is made as a matter of law and is based principally upon the following language in the Supreme Court's opinion (*supra*) \* \* \*

"5. We conclude and hold that it has not been shown that the Protestant land-line telephone company (Concord) which holds a certificate from this Commission to occupy and is occupying the territory involved for the provision of general telephone service cannot or will not or does not desire to render a similar service in the area in question. This conclusion arises on our findings from the evidence that Concord is well embarked upon, and well able to execute, a program to provide a mobile telephone service in the area affected, and becomes a ruling as a matter of law primarily on our interpretation of the language of the Supreme Court in the case of STATE v. TELEGRAPH Co., *supra*, as follows \* \* \*

"6. Therefore, we conclude and hold that we are bound by the Supreme Court decision in STATE v. TELEGRAPH Co., *supra*, as we interpret it, and that the application for a certificate of convenience and necessity in this docket must be denied as a matter of law."

The Commission thereupon ordered that the application be denied, Commissioner Worthington dissenting.

The superior court sustained the applicant's exceptions to Conclusions 5 and 6 and to the entry of the Commission's order, which the superior court ordered reversed. The superior court also sustained the applicant's exception to the failure of the Commission to find the following facts:

"The mobile radio common carrier, in addition to the services set forth above and not dependent on telephone interconnection, directly or indirectly, offers to its subscribers a complete two way radio system, including antenna, antenna site, equipment, maintenance, instruction, operation and an operator; and it offers mobile to portable service, mobile to mobile service, control to mobile service, mobile dispatch service and vice versa, together with each of these to increase the effective range a repeater function, doubling in most instances the effective range. Further, the protestant, Concord Telephone Company, does not, or does not intend to, offer such service." (Emphasis added.)

The Commission and the protestant now assign as error each of the foregoing rulings of the superior court.

Edward B. Hipp for North Carolina Utilities Commission.
E. T. Bost, Jr., and Ronnie A. Pruett for Concord Telephone Company.
Vaughan S. Winborne for Two Way Radio Service, Inc.
Joyner & Howison for Amicus Curiæ.

LAKE, J. Each of the findings of fact made by the Commission is supported by competent, material and substantial evidence in view of the entire record. Each such finding is, therefore, binding upon the reviewing court. Utilities Commission v. Coach Co., 269 N.C. 717, 153 S.E. 2d 461; Utilities Commission v. Telegraph Co., 267 N.C. 257, 269, 148 S.E. 2d 100; Utilities Commission v. Champion Papers, Inc., 259 N.C. 449, 130 S.E. 2d 890.

The superior court was in error in sustaining the applicant's Exception No. 3 to the order of the Commission, this exception being that the Commission erred in failing to find certain facts, set forth in the foregoing statement of facts. The superior court may not make findings of fact or reverse an order of the Utilities Commission on the ground that the Commission should have found the facts to be as the court believes the evidence indicates. The superior court may, in proper cases, remand the matter to the Commission for a finding by it upon a question of fact as to which the Commission

made no finding, or may reverse or remand because a finding made by the Commission is not supported by competent and substantial evidence before the Commission, but it may not reverse the order of the Commission because the Commission did not find facts which the court believes it should have found. See *Utilities Commission v. Membership Corporation*, 260 N.C. 59, 131 S.E. 2d 865. The Commission, not the reviewing court, is the fact finding body. The court's function, upon an appeal from an order of the Commission, is set forth in G.S. 62-94. Furthermore, the evidence before the Commission would not support the findings which the superior court said the Commission should have made with reference to the protestant's intent to offer communication service between two vehicles, between a vehicle and the dispatcher in the office of the owner of the vehicle or between any of these and the protestant's operator. Finally, upon this question, the other facts which the superior court held that the Commission should have found would have added nothing of consequence to what the Commission did find concerning differences in the two proposed services. The applicant's Exception No. 3 to the order of the Commission cannot, therefore, be deemed a sufficient basis for reversing that order.

The judgment of the superior court was that the order of the Commission be reversed and that the cause be remanded to the Commission, with directions to grant to the applicant "a certificate of convenience and necessity as applied for." The application was for "a certificate of convenience and necessity to operate as a common carrier in intrastate communications providing mobile radio service *with interconnection with existing telephone service.*" (Emphasis added.) In the similar case of *Utilities Commission v. Telegraph Co.,* *supra,* we said:

> "Even if the present record were sufficient to support the order granting the Applicant a certificate of public convenience and necessity 'to act as a common carrier of communications providing mobile radio service,' the Commission had no statutory authority to require Carolina [the telephone company there involved] to interconnect the Applicant's radio communications system with Carolina's land telephone system."

For the reasons there stated, no such interconnection could be required of the protestant in the present case.

There remains for consideration the question of whether, upon the facts found by the Commission, there was error of law in its refusal to grant to the applicant a certificate of public convenience and necessity for its proposed operation without such interconnection, the

record showing that the applicant sought such a certificate without interconnection if interconnection could not be had. The determinative questions upon this phase of the case are: Is the protestant authorized by its certificate of convenience and necessity, previously issued, to render a service substantially similar to that proposed by the applicant? If so, may a certificate be issued to the applicant when the protestant is ready, able and willing to render in the same area such substantially similar service? See *Utilities Commission v. Coach Co., supra.*

In accordance with our decision in *Utilities Commission v. Telegraph Co., supra,* the Commission concluded that one rendering the service proposed by the applicant is a public utility, as that term is defined in G.S. 62-3(23); that the Commission has jurisdiction to grant a certificate of convenience and necessity for such service; that the public convenience and necessity, within the area in question, justifies the service proposed; and that the applicant is fit, ready, willing and able to provide such service. There is no exception to these conclusions and they are supported by the facts found by the Commission. It does not, however, follow necessarily that the applicant is entitled to the issuance of such certificate to it.

The applicant did not except to the Commission's Findings of Fact Nos. 5 and 6 and, as we have seen, there is ample evidence in the record to support these findings. They establish that the protestant proposes to provide and is ready, able and willing to provide "Improved Mobile Telephone Service" in this area and that the principal differences between the two proposed services are as stated by the Commission. The Commission's Conclusion No. 5 necessarily implies that the certificate heretofore granted to the protestant, authorizing it "to render telephone service," grants to it the right to furnish, within its service area, its proposed "Improved Mobile Telephone Service." There is no error in this implied conclusion.

A certificate of public convenience and necessity, which authorizes its holder to render "telephone service," does not limit the holder to the practice of the art of telephony as it was known and practiced on the date the certificate was issued, nor to the use therein of devices, equipment and methods then in use. Obviously, it is the intent of such a certificate to authorize the holder to improve its service by adopting and using new and improved devices and methods for telephonic communication. The holder of such a certificate may, indeed, in a proper case, by proper procedures and upon proper proof, be required by the regulatory commission to do so. G.S. 62-32; G.S. 62-42. The very term "mobile telephone service" shows that the art of telephony has now been broadened to include the transmission of the

human voice by a system of communication not wholly dependent upon wires.

The Commission and the courts may take judicial notice of the well known fact that telephone companies today habitually transmit conversations by electrical impulses traveling through part of the intervening space without proceeding upon wires. There transmissions are a part of "telephone service" as that term is used and understood today. See *Commercial Communications v. Public Utilities Commission*, 50 Cal. 2d 512, 327 P. 2d 513, app. dism. and cert. den., 359 U.S. 119, 341, 79 S. Ct. 722, 896, 3 L. Ed. 2d 674, 927. It is not necessary for us in this case to determine when such wireless transmission of the human voice, or other sound, ceases to be a part of "telephone service." It suffices for the present to say, as we do, that that point will not be reached by the mobile service proposed by the protestant here. Consequently, the protestant is authorized by the certificate of public convenience and necessity heretofore issued to it to offer to the public, and to render in its service area, the mobile telephone service it proposes in this record. It follows that its certificate entitled it to the same protection against competition in this portion of "telephone service" that its certificate affords it with reference to other portions of that service.

In *Utilities Commission v. Telegraph Co., supra*, we said:

> "[T]he basis for the requirement of a certificate of public convenience and necessity, as a prerequisite to the right to serve, is the adoption, by the General Assembly, of the policy that, nothing else appearing, the public is better served by a regulated monopoly than by competing suppliers of the service. The requirement of such a certificate is not an absolute prohibition of competition between public utilities rendering the same service. [Citations omitted.] There is, however, inherent in this requirement the concept that, once a certificate is granted which authorizes the holder to render the proposed service within the geographic area in question, a certificate will not be granted to a competitor in the absence of a showing that the utility already in the field is not rendering and cannot or will not render the specific service in question."

We further said in that case that "the two services need not be identical in every respect in order to give the utility already serving the area the prior right." Obviously, a "mobile telephone service" is not a "general telephone service," but it is an adjunct or part of a general telephone service which has developed through the gradual evolution of the art of telephony. Neither the answering service nor

the message relaying service proposed to be rendered by the applicant is an inherent and necessary part of either of the proposed systems of communications. This is a subsidiary service which the applicant proposes to provide by means of a contract with an existing answering service. It is, of course, immaterial whether this subsidiary service is to be supplied by the applicant through its own employees or through an independent contractor. The material circumstance is that this answering service is not, in itself, a public utility within the meaning of G.S. 62-3(23). No certificate of public convenience and necessity is required as a prerequisite to engaging in the business of rendering such a service. The issuance of a certificate for the supplying of "telephone service" gives the certificate holder no exclusive or preferential right to supply a "telephone answering service" or a "message relaying service." Conversely, one who offers or supplies such answering or relaying service does not thereby become eligible for a certificate authorizing him to render a "telephone service" in competition with an established telephone utility holding such a certificate for the area in question. These non-utility services are not determinative of the question of whether the proposed "telephone service" is substantially the same as that of the existing company.

The proposed availability of the "personal paging unit" in the applicant's proposed service does not make the applicant's proposed public utility service substantially different from the service of the protestant. The protestant, having a certificate authorizing it to render mobile telephone service and engaging in the rendition of such service, can be required by the Utilities Commission to install this incident of that service, if and when the Commission properly finds that public convenience and necessity requires it to be added. G.S. 62-42.

There being no substantial difference in the nature of the mobile communication service proposed by the protestant and the mobile communication service proposed by the applicant, there was no error in the conclusion of the Commission that the application for a certificate of public convenience and necessity should be denied. The judgment of the superior court is, therefore,

Reversed.