Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas et al., Appellants,

v.

WILSON COMMUNICATIONS, INC., and Frank T. Wilson, dba Wilson Radio Dispatch, Appellees.

No. 11678.

Court of Civil Appeals of Texas.

Austin.

June 25, 1969.

Rehearing Denied July 16, 1969.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Hawthorne Phillips, Exec. Asst. Atty. Gen., W. V. Geppert, Staff Legal Asst. Atty. Gen., John R. Grace, J. H. Broadhurst, Neil Williams, Asst. Attys. Gen., Austin, for appellants.

James K. Presnal, Alvis Vandygriff, Austin, for appellees.

O'QUINN, Justice.

The question in this lawsuit is whether the gross receipts tax on telephone companies is applicable to the business operation carried on by appellees.

Appellees are Frank T. Wilson, doing business as Wilson Radio Dispatch, and Wilson Radio Communications, Inc., a corporation. The appellees sued the Comptroller of Public Accounts, seeking a declaratory judgment that the gross receipts tax imposed by Article 11.06, Title 122A, Taxation-General, Vernon's Anno.Civ.Sts., does not apply to their communications service business.

The Comptroller, joined by the State of Texas as the real party in interest, filed a counter claim for taxes, penalties and interest.

After trial before the court without benefit of a jury, the trial court rendered judgment that appellees were not subject to the tax and denied the State's claim for taxes. Appellants, the State and the Comptroller, are before us on two points of error urging that 1) the tax is applicable and 2) the claim for taxes should have been allowed.

The period of time covered by the claim for taxes extends from January 1, 1960, through June 30, 1966. During this period appellees, with their main office at McAllen and operating stations at Brownsville, Harlingen, McAllen, and Rincon Camp, were engaged in rendering a communications service. Appellees were licensed by the Federal Communications Commission (Subpart G, Part 21, Vol. VII, F.C.C. Rules and Regulations).

Appellees installed two-way radios in customers' vehicles and, in the years prior to the tax period in question, operated only a dispatch or message-relaying service.

Later, in the first part of the tax period involved, an "executive phone" was used, and in the latter part of the period an interconnection switch was employed, each method permitting a two-way direct conversation to be carried on between a moving vehicle and a fixed telephone. Under a contract with Southwestern Bell Telephone Company, appellees provided their customers connections with the general telephone system. Appellees maintained two switchboards in their office, at which telephone calls could be interconnected with the base station and mobile radios, thus permitting customers speaking from their automobiles to carry on conversations directly with other persons speaking into fixed telephones which were a part of the general telephone company system. Appellees charged their customers for the use of the telephones and other equipment installed in the customers' automobiles and for the services performed by appellees' employees.

We have concluded that the communication business carried on by appellees was subject to the gross receipts tax imposed under the statute and that the judgment of the trial court should be reversed and rendered.

Article 11.06, under the heading "telephone companies," imposes a gross receipts tax. In pertinent part the statute provides that:

> "Each individual, company, corporation, or association owning, operating, managing, or controlling any telephone line or lines, or any telephones within this State and charging for the use of same, shall make quarterly * * * a report to the Comptroller, under oath of the individual, or of the president, treasurer, or superintendent of such company, corporation, or association, showing the gross amount received from all business within this State during the preceding quarter in the payment of charges for the use of its line or lines, telephone and telephones, and from the lease or use of any wires or equipment within this State during said quarter * * *" Art. 11.06, Title 122–A, Taxation-General, V.A.T.S.

■ Since the question involved is whether the person upon whom the tax is sought to be imposed comes within provisions of the statute imposing the tax, the statute must be construed strictly against the tax authority and liberally in favor of the person sought to be held. Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567 (1941); Calvert v. Humble Oil and Refining Company, 381 S.W.2d 229 (Tex.Civ.App., Austin, 1964, writ ref., n. r. e.).

■ In construing Article 11.06, we look to the language of the statute as the best evidence of what the legislature intended. McQuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722 (1943); Sabine Pilots Association v. Lykes Brothers Steamship, Inc., 346 S.W.2d 166 (Tex.Civ.App., Austin, 1961, no writ). By giving the words of the statute

their common and ordinarily accepted meaning, we need not look beyond the statute, if the words are free from ambiguity and doubt. Railroad Commission of Texas v. Texas and New Orleans Railroad Co., 42 S.W.2d 1091 (Tex.Civ.App., Austin, 1931, writ ref.).

Article 11.06 disjunctively specifies the various taxpayers, the different relationships the taxpayers may have to an operation sought to be taxed, and the several properties in the operation, charges for the use of which properties become receipts subject to the tax.

Applying the statute to appellees, Article 11.06 provides that the " * * * individual [or] corporation * * * owning, operating, managing, or controlling * * * any telephones * * * and charging for the use of same, shall make quarterly * * * a report * * * under oath of the individual, or of [an officer] * * * of such * * * corporation * * * showing the gross amount received from all business * * * in the payment of charges for use of its * * * telephone and telephones, and from the lease or use of any * * * equipment * * * during said quarter."

If the individual or corporation employs a "telephone line or lines" in the operation, receipts from charges for use or lease of the "line or lines" must be reported and a tax paid upon the receipts. It is not required that the individual or corporation own or operate "any telephone line or lines" and "telephones" and "equipment" before becoming subject to the tax. The disjunctive language of the statute plainly includes alternative operations admitting radiotelephony as well as communication by telephone over wires.

The operator of a "mobile radio system," who was a "licensed radio common carrier," was treated as a telephone company by Texas Courts in striking down a city ordinance purporting to require a general telephone company to afford its service to the radio common carrier for transmission of

messages or conversations originating at points on the general company's line. Ohmes v. General Telephone Company of Southwest, 384 S.W.2d 796 (Tex.Civ.App., Amarillo, 1964, writ ref.).

The statutes involved in the Ohmes case were Articles 1426–1430, Vernon's Ann.Tex. Stats., requiring persons and corporations "doing a telephone business in this State * * * to make physical connections between their toll line at common points, for the transmission of messages or conversations from one line to another." In deciding the Ohmes case, the court of civil appeals relied on the interpretation of these statutes by the Supreme Court in Southwestern Telegraph and Telephone Co. v. State, 109 Tex. 337, 207 S.W. 308 (1918), in which it was held that the general telephone company "could not be required to afford its service for the transmission of any message or conversation originating at a point on its own line * * *" The court of civil appeals held that the city's authority to prescribe rules and regulations was limited and qualified under the terms of Articles 1426–1430.

On the matter of applicability of the statutes to the mobile radio system, the court of civil appeals stated, "Appellants concede the applicable statutes were passed many years prior to the establishment of mobile radio services such as afforded by Ohmes, but argue the intent of the statutes applies to such modern services. Although no case has been cited which supports this contention, appellee by implication seems to agree." 384 S.W.2d 796, 799, col. 1.

Operations identical to those of appellees in the case before us have been held to be telephone service in cases decided by the supreme courts of at least three other states. The Supreme Court of California in 1958 rejected the contention that the operators "were engaged in an equipment service, not in a 'telephony service.'" The Court stated, "While mobile communication involves an application of the art of radio to telephone communication, it is more akin to

telephony than to radio broadcasting." Commercial Communications, Inc. v. Public Utilities Commission, 50 Cal.2d 512, 327 P.2d 513, appeal dismissed 359 U.S. 119, 79 S.Ct. 722, 3 L.Ed.2d 674, cert. denied and appeal dismissed 359 U.S. 341, 79 S.Ct. 896, 3 L.Ed.2d 927. "In common understanding," the Court said, "the communication effected by private mobile systems would appear to be a telephone communication."

The California decision was followed in 1964 by the Supreme Court of Mississippi (Keith v. Bay Springs Telephone Company, 251 Miss. 106, 168 So.2d 728) and in 1968 by the Supreme Court of North Carolina (State ex rel. Utilities Commission v. Two Way Radio Service, Inc., 272 N.C. 591, 158 S.E.2d 855).

In its decision, the North Carolina court observed: "[C]ourts may take judicial notice of the well known fact that telephone companies today habitually transmit conversations by electrical impulses traveling through part of the intervening space without proceeding upon wires." 158 S.E.2d 855, 863, col. 2. The court also noted that "mobile telephone service," although not a "general telephone service," is a part of and an adjunct to the general telephone service "through the gradual evolution of the art of telephony." 158 S.E.2d 855, 864, col. 1.

■ Appellees take the position that since these cases did not involve tax statutes, but determined whether the radio services in each instance constituted a public utility, the principle established in these cases, if applied here, would require that appellees be considered a telephone company for all purposes, resulting in "an encroachment and alteration of other areas of Texas law." We do not consider that from placing a gross receipts tax on telephone service it follows that operations coming within the tax statute acquire the status of public utilities with the power of eminent domain.

■ The service conducted by appellees provided telephones, equipment, and facilities whereby a customer speaking from an

automobile could have a telephone conversation directly with a person speaking over a fixed telephone in the customer's office. The "lines" used in this type of operation are radio waves, just as microwaves transmit telephone conversations, in lieu of wires, in operations conducted by general telephone companies.

We hold that the communication operations conducted by appellees are within the provisions of Article 11.06. The judgment of the trial court is reversed, and judgment is here rendered that appellants recover the taxes claimed for the tax period as alleged in the counter claim.

Judgment is reversed and rendered.

Reversed and rendered.