**WILSON COMMUNICATIONS, INC., and Frank T. Wilson, d/b/a Wilson Radio Dispatch, Petitioners,**

v.

**Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas et al., Respondents.**

No. B–1721.

Supreme Court of Texas.

Feb. 18, 1970.

Vandygriff & Presnal, James K. Presnal and Alvis Vandygriff, Austin, for petitioners.

Crawford Martin, Atty. Gen., J. H. Broadhurst, Asst. Atty. Gen., Austin, for respondents.

POPE, Justice.

Frank T. Wilson, doing business as Wilson Radio Dispatch, and Wilson Radio Communications, Inc., hereafter called Wilson Radio, obtained a declaratory judgment that its operations did not fall within the terms of Article 11.06, Title 122A, V.A.T.S., which imposes a tax upon the gross receipts of telephone companies. The court of civil appeals reversed the trial court's judgment and rendered judgment that the State recover the taxes it claimed were owing. Tex.Civ.App., 443 S. W.2d 419. Wilson Radio says that it derives its receipts from radio services and not from telephone services within the meaning of Article 11.06, which in pertinent part says:

"Each individual, company, corporation, or association owning, operating, managing, or controlling any telephone line or lines, or any telephones within this State and charging for the use of same, shall make quarterly * * * a report to the Comptroller, under oath of the individual, or of the president, treasurer, or superintendent of such

company, corporation, or association, showing the gross amount received from all business within this State during the preceding quarter in the payment of charges for the use of its line or lines, telephone and telephones, and from the lease or use of any wires or equipment within this State during said quarter * * *."

Wilson Radio operates a two-way radio service under a license from the Federal Communications Commission which authorizes it, as a radio common carrier, to operate a public land mobile radio service. It installs and leases two-way radios in mobile vehicles belonging to its patrons so they can send and receive communications. A patron in a mobile unit can transmit by voice over a two-way radio a message to Wilson Radio's base station located at McAllen. From that base station, the patron in the mobile unit may also receive messages. Wilson Radio says that its service is limited to communications without wires or lines between the mobile units and the base station at McAllen and that it makes no charge for the use of any telephone line.

The problem in the case arises out of what occurs at the base station in McAllen. The Southwestern Bell Telephone Company, by contract with Wilson Radio, provides certain facilities at the McAllen base station. It provides an interface, which apparently is a surface or boundary between Wilson Radio's operations and equipment and Southwestern Bell's operations, and equipment. On Southwestern Bell's side of the interface, there is an interconnection which is the point at which Wilson Radio may put one of its mobile radio patrons in contact with a land based fixed telephone. Southwestern Bell provides the switchboard and several trunk lines. If one of Wilson Radio's patrons in a mobile unit desires to speak to a fixed telephone, he must first contact the base station operator who will then place a call by dialing the number for its patron and making the connection so the patron may talk directly. The telephone company installs, owns, repairs and services all of its equipment on its side of the interface. Neither owns, operates, manages, controls or makes charges for the service or equipment of the other.

Significant to our decision is that part of Article 11.06 which imposes the tax upon the telephone company "charging for the use of same." The undisputed evidence is that Southwestern Bell charges and collects all tolls between the interface and fixed telephones. Wilson Radio charges only for its services between its mobile units and the interface. It charges its patrons monthly for the lease of its equipment and either a flat rate per month or a charge per call per minute. It does not share in nor receive any commission on the revenue derived by Southwestern Bell from its telephone service. Southwestern Bell's traffic agent described Wilson Radio as its customer. He said Wilson Radio's patrons are not customers of Southwestern Bell. Wilson Radio's telephone number is listed in the telephone book, but the mobile patrons are not listed. Southwestern Bell bills Wilson Radio for all local and long distance calls placed by Wison Radio for its patrons. Acting only as the collector for Southwestern Bell, Wilson Radio then passes on to its patrons that exact charge with nothing added. Southwestern Bell charges for its services on its side of the interface. Wilson Radio charges its patrons for the services on its side according to tariffs filed with the Federal Communications Commission.

The court of civil appeals, in holding that Wilson Radio is operating a telephone service, has grounded its opinion upon several cases which arose in other states and which concerned statutes that are wholly unlike Article 11.06. Commercial Communications v. Public Utilities Commission, 50 Cal.2d 512, 327 P.2d 513 (1958) held that the public utilities commission had jurisdiction to accept tariffs

filed by a mobile communication system under a statute which broadly defined a telephone line as including communication "with or without the use of transmission wires." State ex rel. Utilities Commission v. Carolina Telephone and Telegraph Co., 267 N.C. 257, 148 S.E.2d 100 (1966) held that the public utility statutes of North Carolina, in defining a telephone utility as a utility conveying or transmitting messages by "other means of transmission, namely radio," was broad enough to include a mobile radio. See also State ex rel. Utilities Commission v. Two Way Radio Service, Inc., 272 N.C. 591, 158 S.E. 2d 855 (1968). Similarly, the court held in Keith v. Bay Springs Telephone Company, 251 Miss. 106, 168 So.2d 728 (1964) that the State's regulatory commission's powers over utility companies embraced mobile radio systems since the Public Utility Act granted powers over "the transmission of any message by wire or radio, * * *."

Ohmes v. General Telephone Company of Southwest, 384 S.W.2d 796 (Tex.Civ. App.1964, writ ref.) is not helpful. One mobile radio operator sought to compel an interconnection with a telephone company that had a competing mobile radio system. The court did not determine whether the radio services were telephone services, since the opinion states that was not made an issue in the case.

■ We have found no case which is controlling. Viewing the tax statutes broadly, it appears that the legislature intended to tax the gross receipts from telephone services but was silent about a similar tax upon radio services. In construing the statutory reach of the tax, we must follow the rule that the statute is construed with strictness against the taxing authority. Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567 (1941).

The State reasons that we should extend the tax coverage to Wilson Radio because telephone techniques have so advanced that communication services now include microwave and radio frequencies as well as the transmission of voice communications by lines and wires. In our opinion, however, the statute does not speak of communications generally. It limits the kind of services reached by the tax, when it uses the words, "charges for the use of its line or lines, telephone and telephones, and from the lease or use of any wires or equipment * * *." The statute employs the usual and historical description of telephone systems. See Southwestern Bell Telephone Company v. Cook, 30 S.W.2d 497 (Tex.Civ.App.1930, writ ref.).

■ In United States v. Community TV, Inc., 327 F.2d 797 (10th Cir. 1964), the court was called upon to determine, among other questions, whether a corporation established for the purpose of relaying TV signals by microwave was a company subject to taxes assessed under Section 4251 of the 1954 Internal Revenue Code. The section at that time imposed a tax on "leased wire, teletypewriter or talking circuit special service." The case does not control our decision, but it draws a relevant distinction between radio waves which the statute did not reach and the transmission and reception of signals by wire which the tax statute did reach. In our opinion, only a labored construction of Article 11.06 could produce a meaning that voice communication by radio is included in a business charging for use of a "line or lines, telephone and telephones, and from the lease or use of any wires or equipment * * *."

We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.