No. 47,523

General Communications System, Inc., *Appellant*, v. The State Corporation Commission of the State of Kansas and P. L. Woodbury, d/b/a Mobilfone of Kansas, *Appellees*.

(532 P. 2d 1341)

Opinion filed March 1, 1975.

*L. M. Cornish, Jr.,* of Glenn, Cornish and Leuenberger, of Topeka, argued the cause, and *Jan W. Leuenberger* and *Henry J. Schulteis,* of the same firm, were with him on the brief for the appellant.

*Sard Fleeker,* Assistant General Counsel, argued the cause and was on the brief for the appellee, State Corporation Commission.

*Ralph Skoog,* of Crow and Skoog, of Topeka, argued the cause and was on the brief for the appellee, P. L. Woodbury, d/b/a Mobilfone of Kansas.

The opinion of the court was delivered by

KAUL, J.: This litigation stems from the granting of a certificate of convenience and necessity by the State Corporation Commission to appellee (P. L. Woodbury, d/b/a Mobilfone of Kansas) to perform services as a radio common carrier in the vicinity of McPherson. The granting of the certificate was challenged by appellant (General Communications Systems, Inc.) who appeared as a protestant at the hearing before the commission. The appellant will hereafter be referred to as General and the appellees as Woodbury and the commission.

Woodbury held certificates to operate as a radio common carrier in Topeka, Manhattan, Emporia, Great Bend and Hays. Woodbury's capacity, financial or otherwise, to provide the services in McPherson is not questioned. On August 26, 1970, Woodbury filed the instant application for authority to operate from a base station in McPherson. Orthal D. Vrana is the owner and president of General which holds certificates to operate in Salina and within a radius of fifty miles therefrom and a certificate to operate from Wichita within a radius of fifty-five miles. McPherson lies within the overlapping certificated areas of both Salina and Wichita.

After the Woodbury certificate was granted, General made application for rehearing which was denied. Pursuant to K. S. A. 66-118a, et seq., General made application for review by the district court of McPherson County. On January 14, 1974, the district court found the certificate issued by the commission to be lawful and reasonable and General perfected this appeal.

General specifies ten points of error. In its first four points General attacks the commission's proceedings, claiming it failed to set forth an adequate statement of facts; that there was no substantial competent evidence upon which the findings could be made or that would support the conclusions of law; and that there was no substantial evidence upon which the commission could make a finding of public need. General's other points go to the proposition that the commission failed to apply basic public utility law, particularly with respect to public need and the protection of the territorial integrity of General.

This is the first case to reach this court involving the regulation of this relatively new industry.

In 1969 the legislature saw fit to declare radio common carriers to be public utilities and subject to regulation as such by amend-

ment to K. S. A. 66-101. The scope of the services to be regulated was set out in K. S. A. 66-1,143, which reads:

"The term 'radio common carriers' as used in this act [*] shall include all persons and associations of persons, whether incorporated or not, operating a public 'for hire' radio service engaged in the business of providing a service of radio communication, one-way, two-way or multiple, between mobile and base stations, between mobile and land stations, including land line telephones, between mobile stations or between land stations, but not engaged in the business of providing a public land line message telephone service or public message telegraph service within this state."

Under the provisions of K. S. A. 66-1,144 the transaction of business as a radio common carrier was prohibited without securing:

". . . [A] certificate from the corporation commission that public convenience will be promoted by the transaction of said business and permitting said applicants to transact the business of a radio common carrier in this state. . . ."

The statute also provided for the "grandfathering" in of any person engaged in the business at the time of the enactment of the act by providing that such person:

". . . [S]hall receive a permit to transact business from the corporation commission authorizing such person to continue the construction or operation of such radio common carrier in the territory professed to be served by such person on the effective date of this act [*]: *Provided,* That within sixty (60) days after this act [*] becomes effective, such person shall file with the corporation commission an application for such certificate, including copies of any license or licenses issued by the federal communications commission· to such person showing the area professed to be served by such person."

Woodbury and General obtained their existing certificates under the grandfather provision.

Agreements to interconnect with telephone companies serving the area certificated were authorized by K. S. A. 66-1,145 which further provided that if such an agreement could not be reached, the commisison could, on a showing of necessity, order an interconnection on reasonable terms to be established by the commission.

Following the enactment of the statutes referred to the commission invited all radio common carriers of the state to participate in a proceeding docketed and entitled "In the matter of the general investigation of radio common carriers." Both General and Woodbury participated in these proceedings, and both parties and the commission refer in their briefs to the memorandum opinion of the commission filed at the conclusion of the proceedings. The purpose of the memorandum opinion is stated by the commission

in paragraph No. 6 thereof which is quoted in the commission's brief as follows:

" '6. This memorandum opinion is solely for the previously stated purpose of establishing tentative guidelines and to lay the basic ground rules for Commission policy and precedent as we proceed in this beginning phase of the regulation of radio common carriers.' "

At the instant hearing before the commission, applicant, Woodbury, called three witnesses—himself, Mr. Ward H. Thompson, holder of a certificate to operate in Lawrence, and Mr. Donald F. Lett, holder of a certificate and operating a station in Hutchinson within a radius of forty miles. Protestant, General, called one witness, Mr. Orthal D. Vrana, owner and president of General.

The evidence disclosed that McPherson was located in the certificated operating radii of three stations—those operated by General at Salina and Wichita and a station operated by Mr. Lett in Hutchinson, which is the closest of the three. None of the three provided "local service" in McPherson; that is they could not provide nontoll interconnecting service with the local land line telephone company serving the McPherson area. It was also established that none of the three could provide "paging" service in the McPherson vicinity, that the normal range of reception for "pagers" at the present stage of the art is about fifteen miles. A pager is an electronic device usually carried upon the person of a customer by means of which a signal from a station may be received.

Mr. Woodbury testified that he had received requests for service from potential customers located in McPherson and several nearby towns; that his proposed service would interconnect with the local telephone system so that a subscriber could make local telephone calls at the established call rate in the area "without the necessity of going through long distance call charges"; and that he would be able to serve pagers in the immediate area of McPherson.

Mr. Lett testified that his area of authorization was a radius of forty miles from Hutchinson which completely covered the community of McPherson. He stated that the location of a station in McPherson would be advantageous to his subscribers in Hutchinson. Mr. Lett also related a telephone conversation with Mr. Vrana, of General, concerning the Woodbury application. In this connection he testified:

"Q. Have you inquired of Mr. Vrana who runs General Communications whether he desired and intended to put a station in here?

"A. Mr. Vrana has called me in regard to this before this came up, and

I have specifically—he had objected that Mr. Woodbury was going to put that in, and I had specifically asked him at least twice if he had intentions of putting it in, and he didn't give me any clear-cut answer that he did, and I said, 'I can't see no reason why he can't put it in then. If you're not going to put it in, why not have him put it in. It's a benefit to the whole service.' He said, 'Well, it's a precedent. It's a precedent. If he comes in and puts it in McPherson because his pattern covers that, he can come into Wichita.' My pattern covers it much better than any other. I can't interconnect. It's still an advantage to me if I'm not going to put it in to have someone else to go in; and if Mr. Woodbury doesn't go in there, then I would go in. It's a benefit to the industry. I look at it as a benefit to the industry. It doesn't make any difference to me if Mr. Vrana goes down there or he goes down there. That is what I'm here to tell you the best I can."

Mr. Lett also testifies that he had received requests from McPherson residents for telephone service, but it was not feasible to provide such service "because they can't interconnect."

Mr. Ward Thompson had authorization as a radio common carrier in Lawrence. He testified that other radio common carriers located in Kansas City and Topeka could be received in Lawrence at the time he secured his certificate, but that he provided local interconnecting and paging services.

Mr. Vrana, of General, testified that he had not received any demand for additional service in the McPherson area, but if it were demanded he would be prepared to provide it. He testified that he was not, at the present time, actually providing radio common carrier services to any subscriber at McPherson, but that he had solicited about sixty-five people in the McPherson area and found no interest. He further testified that with present facilities he was not able to serve McPherson paging customers and that there was no way he could directly interconnect a McPherson subscriber directly into McPherson.

On November 4, 1970, the commission filed its certificate and order in which it reviewed the testimony of all of the witnesses, made findings of fact and extensive conclusions of law. It is true, as General points out, that some of the conclusions of law actually include findings of fact—however, we find no error of substance in this regard.

The commission's findings of fact are as follows:

"That the Applicant is requesting a certificate of convenience and necessity to transact the business of a Radio Common Carrier at and within a service area of approximately a 50 mile radius from a base station tower located at latitude 38° 22'32" N-longitude 97° 35'56" W (2 miles east of McPherson, Kansas)."

"2. That applicant proposes to file an application with the Federal Communications Commission for a license to operate on the base station frequency of 152.12 MC and on the mobile station frequency of 158.58 MC.

"3. That there is no radio communications service based out of McPherson and that there is no radio communication service that directly interconnects into the land line system at McPherson.

"4. That as a consequence, although there is some service available in the area from certificated service that overlaps from other base stations, it is not of the same nature that would be available if the service were based in the City of McPherson itself and directly interconnected with the land telephone business."

In its conclusions of law the commission found that, although regulation of radio common carrier service is comparable to other utilities, the rules pertaining to utilities generally are not completely compatible to regulation of radio common carriers. The commission noted that as a utility service radio common carriers are still in an early stage of development and consequently regulatory aspects of the service are likewise in an early stage, but that the flexibility in administrative regulatory rules and procedure will permit the regulatory agency to examine the circumstances and nature of the service. The commission considered in depth the requirement of necessity with respect to certification of other utilities and rationalized a distinction with respect to the strict application of the necessity requirement in the case of a radio common carrier application. The commission found that the evidence herein showed only "nebulous" necessity because necessity at the present stage of development is not really clear until the service is developed and promoted. The commission reasoned that in a case such as that at bar, where there is no service with direct land line interconnection available, an applicant willing to invest in such service and promote it should be given the opportunity to do so.

On judicial review the trial court noted the limitations on review prescribed by K. S. A. 66-118d; found that the commission's order was supported by substantial competent evidence; and that while there was Wichita and Salina service available to McPherson residents, there is no McPherson radio common carrier service available. The trial court concluded that the commission's order was lawful and reasonable.

Turning to General's contentions on appeal, we find no merit in its assertion that the commission failed to set forth adequate facts. This court, on numerous occasions, has stated that the commission in compliance with the requirements of our Public Utilities Act

(K. S. A. 66-101, *et seq.*) and in accord with its own regulation
(K. A. R. 82-1-232) must expressly state the basic findings of fact
upon which its action is based. (*Cities Service Gas Co. v. State
Corporation Commission,* 201 Kan. 223, 440 P. 2d 660.) In the
instant case the commission's findings cover the basic issues and are
set out with sufficient specificity to allow the court to perform the
function of judicial review assigned by statute. There is substantial
competent evidence consisting of the testimony of applicant's three
witnesses, and also that of the protestant, that Woodbury would
be able to perform a specialized carrier service different from and
more suitable to the needs of McPherson users than any other
service now available.

The central thrust of General's position is that the commission
failed to apply basic utility law to protect its territorial integrity in
that necessity, as well as convenience, must be shown in order to
grant the certificate sought by Woodbury and that a showing of
necessity should be the same as that required in the case of other
utilities.

General correctly points out that although the general public
utility statute, K. S. A. 66-131, unlike K. S. A. 66-1-114, pertaining
to certification of motor carriers, only requires that a certificate of
public convenience be obtained in order to carry on public utility
operations, the courts have always spoken in terms of public neces-
sity, as well as convenience, when making rulings concerning issu-
ance of public utility certificates, *e. g., Telephone Co. v. Telephone
Association,* 94 Kan. 159, 146 Pac. 324.

In its conclusions of law the commission recognized that the re-
quirement of necessity has been added, by judicial implication, to
the statutory requirement of convenience. In this connection, the
commission said in conclusion No. 4:

"4. Both parties have emphasized the term 'necessity', the protestant point-
ing out that there is no great public demand for applicant's service, hence no
'necessity'. The Applicant, on the other hand, points out that K. S. A. 66-1,144
makes no requirement of necessity, but refers only to a certificate of conve-
nience. The point is not too well taken, however, in light of the fact that
K. S. A. 66-131, pertaining to utilities generally, refers only to 'public conve-
nience'. The term 'necessity' has developed through the years and has been
approved by judicial interpretation of K. S. A. 66-131 and related statutes. The
term has come into use by judicial implication, rather than express statutory
statement."

The commission went on to rationalize a need for different applica-
tion of the necessity requirement to the issuance of certificates in the

new and still developing services of radio common carriers from the application thereof to the more traditional utility services. In this connection the commission observed:

"Certainly Radio Common Carrier service is a convenience to any subscriber who can afford it. The matter of necessity is something else. The 'necessity' for gas, electric and telephone service is obvious in this day and age. Every one considers one or more of these services a necessity, although there was probably a time when this was not so clear—and it may be that there will come a day and age when availability of Radio Common Carrier service is just as much a necessity as is the telephone or other type of utility service.

"At the present time, however, Radio Common Carrier Service remains in the category of a specialized service to meet the immediate needs of a relatively small number of subscribers whose professional or occupational activities are capable of enhancement by more immediately available communications.

"The obvious distinction between Radio Common Carrier service and more traditional utility service is that in the latter the subscriber is aware of his need without being told. Radio Common Carrier service, on the other hand, remains to a great extent a service to be promoted and sold—the potential subscriber has still to be convinced of his need. Thus, a survey showing the number of people in an area without gas, or electric or telephone utility service, indicates some necessity by mere absence of available service. The same cannot be said of Radio Common Carrier service. It is of nebulous necessity, and we reach the hazardous conclusion that the necessity at the present stage of development is not really clear until it is developed and promoted."

Following the foregoing analysis the commission concluded:

"5. That in an instance such as the case now at issue, when there is no base station service with direct land line interconnection presently available, the only available service being that of extension from a base station in another community, we must conclude that an applicant willing to invest in such service and promote it should be given the opportunity to do so.

"6. The Applicant having established his qualifications, and having committed himself to render service based out of McPherson should be granted a certificate for the area."

While there was evidence of some demand for localized service in McPherson, the commission's description of the necessity shown as "nebulous" is probably appropriate. We believe, however, that the handling of the matter properly falls within the realm of administrative expertise, and we are not inclined, nor are we permitted, to impose judicial interference unless the commission's action is shown to be unlawful or unreasonable (66-118d).

While it cannot be said that Woodbury's proposed service is shown to be necessary in the sense of being indispensable, we believe the testimony of Lett and Woodbury indicates an element of public need that is more than a mere showing of convenience.

We considered the meaning of the word "necessity" as used in cases dealing with the regulation of public utilities in the case of *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 482 P. 2d 1, wherein Mr. Justice Fromme speaking for the court said:

". . . Public necessity does not necessarily mean there must be a showing of absolute need. As used, the word 'necessity' means a public need without which the public is inconvenienced to the extent of being handicapped. . . ." (pp. 676, 677.)

The evidence shows that at least the segment of the public desiring to make use of the proposed services would be inconvenienced to the extent of being handicapped.

The authority and jurisdiction of the commission to supervise and control the public utilities in this state are conferred by statute (K. S. A. 66-101.) Discretionary authority was delegated to the commission, not to the courts. (*Central Kansas Power Co. v. State Corporation Commission,* supra.) Considering the facts of this case in the light of the early stage of the development and regulation of radio common carrier services, we are unable to say that the commission's action was unreasonable. We deem it unnecessary to again review the many cases in which this court has called attention to the limitations imposed on the judicial review of commission proceedings. In summary, it may be said the end result of judicial review is to determine whether the commission's order is lawful and reasonable. In making such review, the district court is required to search the record to ascertain whether there is substantial evidence to support the basic findings of fact made by the commission and the court is not authorized to substitute its judgment for findings of the commission if the matter is within the realm of fair debate. (*Cities Service Gas Co. v. State Corporation Commission,* supra; and *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 386 P. 2d 515.) Appearing time and time again in our opinion is a succinct statement made for the first time by Justice Dawson in *Southern Kansas Stage Lines Co. v. Public Service Comm.,* 135 Kan. 657, 11 P. 2d 985:

". . . It is only when such determination is so wide of the mark as to be outside the realm of fair debate that the courts may nullify it. . . ." (p. 622.)

See, also, *Central Kansas Power Co. v. State Corporation Commission,* supra; *Missouri Pacific Rld. Co. v. State Corporation Com-*

*mission,* 205 Kan. 610, 470 P. 2d 767; and *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.,* 182 Kan. 603, 322 P. 2d 715.

General argues the commission acted unlawfully in that it made no finding that the existing radio service at McPherson was inadequate. This is not a case involving inadequate existing service. There is Wichita and Salina service available to McPherson, but the record makes clear there is no McPherson radio common carrier service available in McPherson. This circumstance is set out in the commission's findings of fact Nos. 3 and 4.

General contends that after assigning territory to existing carriers, as provided in 66-1,144, it became the commission's duty to protect these carriers against invasion of their territories by others. General says that this proposition is further evidenced by language found in the commission's memorandum opinion issued following the general investigation proceedings, heretofore referred to. In its brief the commission answers this assertion by quoting a portion of the opinion not referred to by General. It reads:

" 'When the base stations are not the same, but the geographical areas substantially overlap, is another matter. It then becomes a factual question as to the abilities of the competing companies to render service from their respective base stations. It could well be that the variance in location could cause a serious difference in the service available, and the choice would be dependent upon each subscribers' needs. *Thus, service available in one community, but based in another community, might not be as adequate as service based in the community of the subscriber's residence. Particularly is this so when the service is also dependent upon interconnection capability with the land line system.'* (Emphasis supplied.)"

The last statement quoted fits closely the facts of the instant case. Supported by substantial evidence the commission found that service now offered by General in McPherson is not of the same nature that would be available if the service were based in the city itself and directly interconnected with the local land line telephone as Woodbury proposes. Viewed in this light the certificating of Woodbury cannot be said to constitute an invasion of General's territorial integrity. The proposed service does not duplicate existing service. There is no claim or showing by General that it would suffer economic injury or limitation to its ability to provide the present service offered in its territory which is a fundamental consideration involved in the application of so-called basic public utility law. A careful scrutiny of the testimony in this case indicates that General simply does not desire to furnish service based in McPherson, but at the same time hopes to prevent any other carrier from doing so.

In an attempt to support its position General cites several cases from other jurisdictions, which we have examined and found not to be persuasive on the facts herein. Generally, the cases cited dealt with duplication of existing services and direct competition between the applicant and the existing operator.

The case of *Radio-Fone, Inc. v. A. T. S. Mobile Telephone, Inc.*, 187 Nebr. 637, 193 N. W. 2d 442 (1972), involved an appeal by Radio-Fone, Inc. from the Nebraska commission's order denying its application in Omaha within a thirty-five mile radius. A. T. S. Mobile Telephone, Inc., also based in Omaha, holder of a certificate for a thirty-five mile radius, protested before the commission. Radio-Fone, Inc., submitted evidence that it was prepared to offer a more sophisticated two-way service than that which could be furnished by A. T. S. because of involvement in certain legal difficulties. On the other hand, A. T. S. submitted evidence that its legal difficulties had been resolved, that it had received necessary permits from the Federal Communications Commission and was prepared and capable of offering services comparable to those offered by Radio-Fone, Inc. The Nebraska Supreme Court affirmed the commission's order essentially on the ground that under the pertinent Nebraska statute (section 75-604, R. R. S. 1943) no duplication is permitted unless the existing company (A. T. S.) is not and will not in a reasonable time furnish adequate service. The case is readily distinguished from the facts at bar—both companies were based in Omaha with the same thirty-five mile operating radii, and the applicant proposed to offer essentially the same service which the protestant was prepared to offer.

For the same reason the decision in the case of *Utilities Commission v. Radio Service, Inc.*, 272 N. C. 591, 158 S. E. 2d 855 (1968), is not pertinent to the issue herein because there the appealing applicant was seeking to serve the same area near the city of Albemarle as that served by the existing company who was the protestant. The North Carolina Supreme Court found no substantial difference in the nature of the service proposed by the applicant and that proposed by the protestant. The judgment of the lower court overruling the order of the North Carolina commission was reversed because the Supreme Court found the commission's findings were supported by substantial competent evidence and, thus, binding on the reviewing court. The Supreme Court directed that the commission's order denying a certificate to applicant be reinstated.

General cites *White v. Louisiana Public Service Commission,* 259 La. 363, 250 So. 2d 368. The case involved a controversy between two radio common carriers over territory surrounding the city of Abbeville. Reversal of the judgment of the lower court was based on the ground that a Louisiana procedural statute (LSA-R. S. 45: 1194) had been violated in that the lower court had received into evidence depositions of several witnesses which had never been received or considered by the commisison. The Louisiana Supreme Court did not rule upon the merits of the case, but remanded it to the commission for further proceedings with instructions to prepare a record sufficient to afford adequate judicial review.

Insofar as the cases discussed above stand for the proposition that a certificate should not be granted to another service, which will duplicate the existing service unless the regulatory authority first determines that existing service is inadequate and that the person operating the same is unable or refuses to provide such service, we agree. However, this is not a case of duplication of services now offered or proposed by the existing operator. Our holding herein is not intended to erode the theory of regulated monopoly in public utility law which has long been recognized in this jurisdiction. (*Kansas Gas & Electric Co. v. Public Service Com.,* 122 Kan. 462, 251 Pac. 1097.) The theory was restated in the recent case of *Central Kansas Power Co. v. State Corporation Commission,* supra, in these words:

"The statutes authorizing the commission to supervise and control corporate action in the utility field have been generally understood as an expression of the legislature's administrative policy designed to protect against ruinous competition, to promote adequate and efficient service and to limit the waste attendant on unnecessary duplication of facilities designed for the same purpose in the same area." (p. 677.)

In their briefs all of the parties refer to the fact that there is dual regulation of radio common carriers shared by the state and federal communications commission. It is pointed out that the FCC in granting channel certificates to radio common carriers offers protection only to the "reliable service area" which is encompassed in what is labeled a "37 D. B. U. contour" which, the commission says is more like twenty-five to thirty-five miles, rather than fifty or fifty-five. The commission says that subsequent to its assignments of service areas under the "grandfather" clause of 66-1,145 it has become better informed concerning what might be considered reliable service area. The matters mentioned are not in the record,

nor were they before the commission at the hearing and, therefore, cannot be relied upon in the determination of this appeal. However, the new information concerning reliable service area gives validity to what was said by the commission in conclusion No. 3, wherein it observed that radio common carrier service and regulatory aspects thereof are both in an early stage of development and require flexibility in administrative regulatory rules and procedure permitting the administrative agency to examine the circumstances and nature of the service.

It is true, McPherson lies within the far reaches of the radii authorized to the Salina and Wichita stations, but the services proposed by Woodbury are not in duplication of existing services. There is no claim made that General would suffer economic injury, nor is there any evidence that its ability to furnish services now offered would be limited or hindered. It is true, the evidence does not show a need for the services proposed by Woodbury in the sense that such services are indispensable, but we are satisfied with the differentiation made by the commission between the application of the necessity requirement with respect to the particular circumstances in this case and the application thereof in a case involving a general utility application.

The record fails to establish that the commission's order was unlawful or unreasonable, therefore the judgment below is affirmed.