STATE OF NORTH CAROLINA, EX REL, UTILITIES COMMISSION, v. CAROLINA COACH COMPANY, CAROLINA SCENIC STAGES, GREYHOUND LINES, INC., QUEEN CITY COACH COMPANY, SEASHORE TRANSPORTATION COMPANY, INC., SMOKY MOUNTAIN STAGES, INC., CAROLINA DELIVERY SERVICE COMPANY, INC., OVERNITE TRANSPORTATION COMPANY, AND THURSTON MOTOR LINES, INC.

(Filed 29 March, 1967.)

**1. Utilities Commission § 7—**

In a proceeding to obtain approval of the Utilities Commission for the transfer of all the capital stock of a franchise carrier from one holding corporation to another, evidence establishing ample financial responsibility and operating experience of the proposed purchaser negates that such transfer would be contrary to the public interest, and the fact that the franchise carrier might thereafter undertake to exercise its franchise rights on a much larger and more varied scale which would adversely affect the business of the competing protestants does not give them ground for complaint, the extent and scope of the franchise rights not being affected by the transfer of the capital stock.

**2. Same—**

In a proceeding to obtain approval of the Utilities Commission for the transfer of all the capital stock of a franchise carrier from one holding corporation to another, findings supported by evidence that the franchise carrier was conducting active operations under the franchise and that its ability to render service to the public within the limits of its franchise rights would not be adversely affected by the proposed transfer of its stock, support conclusions that the proposed sale of its stock is justified

by the public convenience and necessity within the meaning of G.S. 62-111(a), and G.S. 62-262(e)(1) is not applicable to the approval of such stock transfer.

**3. Same—**

In a proceeding to obtain approval of the Utilities Commission for the transfer of all the capital stock of a franchise carrier from one holding corporation to another, findings of the Commission supported by substantial evidence to the effect that the franchise carrier did not in fact obtain its franchise for the purpose of transferring it to another obviates the proscription of G.S. 62-111(d).

**4. Utilities Commission § 9—**

The findings of fact of the Utilities Commission are conclusive and binding when supported by competent, material and substantial evidence in view of the entire record. G.S. 62-94(b)(5).

**5. Same—**

In a proceeding to obtain approval of the Utilities Commission for the transfer of all the capital stock of a franchise carrier from one holding corporation to another, the Commission's decision limiting its order to approval of the transfer of the stock does not involve questions as to the extent and scope of the franchise holder's presently subsisting franchise rights or the rights of the transferee to merge the franchise holder into its corporate structure, even though a future intent to merge is adumbrated by its evidence, and the questions of the extent of the franchise rights and the right to merge is to be determined *de novo* when properly raised in subsequent proceedings.

LAKE, J., took no part in the consideration or decision of this case.

APPEAL by protestants from *Morris, J.,* May 9, 1966 Non-Jury Session of WAKE, docketed and argued as No. 547 at Fall Term 1966.

On May 13, 1965, Leaseway Transportation Corp. (Leaseway), a Delaware corporation, as transferor, and United Parcel Service, Inc. (United), an Ohio corporation, as transferee, filed an application with the North Carolina Utilities Commission (Commission) for authority "to change control, through stock transfer and merger," of Contract Carrier Permit No. P-168. The application states: "United Parcel Service, Inc., proposes to purchase from Leaseway Transportation Corp., the present owner, all of the outstanding shares of the capital stock of Caro-Line Transportation, Inc., the holder of the said permit, and thereafter cause Caro-Line Transportation, Inc., to merge into United Parcel Service, Inc."

Protests to said application were filed by Carolina Coach Company, Carolina Scenic Stages, Greyhound Lines, Inc., Southern Greyhound Lines Division, Queen City Coach Company, Seashore Transportation Company, Inc., Smoky Mountain Stages, Inc., and Southern Coach Company, common carriers of passengers by motor

vehicle; by Carolina Delivery Service, Inc., Overnite Transportation Company and Thurston Motor Lines, common carriers of property by motor vehicle; and by Carolina-Virginia Couriers, Inc., a specialized contract carrier.

A hearing was held by the Commission in August, 1965. At the outset thereof, the applicants, through their counsel, stated they were seeking in this proceeding the approval of the purchase by United of all of the outstanding stock of Caro-Line from Leaseway, and were *not* seeking authority to merge Caro-Line into United "at this time."

On November 24, 1965, the Commission, in opinion by Commissioner Worthington, after reviewing the prior proceedings and the evidence offered at the hearing, set forth its findings of fact and conclusions of law and "ORDERED that the application in this matter be, and the same is hereby, approved to the end that Leaseway Transportation Corp. be, and it is hereby authorized to sell and transfer to United Parcel Service, Inc., all of the capital stock of Caro-Line Transportation, Inc." A concurring opinion was filed by Commissioner Peters. A dissenting opinion was filed by Commissioner Eller.

When used hereafter, the words "protestants" and "appellants" refer to all of said original protestants except Southern Coach Company and Carolina-Virginia Couriers, Inc., which did not except to or appeal from the Commission's order.

Protestants, based on thirty-four specific exceptions, appealed from the Commission's order to the superior court.

After hearing in the superior court, Judge Morris overruled all of appellants' exceptions to the Commission's order of November 24, 1965, and affirmed in all respects the Commission's said order. Protestants excepted and appealed. They assign as error the overruling of each of their exceptions to the Commission's order and the court's decision and judgment.

*Edward B. Hipp for North Carolina Utilities Commission, appellee.*

*Boyce, Lake & Burns and Schnader, Harrison, Segal & Lewis for Leaseway Transportation Corp. and United Parcel Service, Inc., applicants, appellees.*

*Allen, Steed & Pullen; Joyner & Howison; Newsom, Graham, Strayhorn & Hedrick; Ward & Tucker; McCleneghan, Miller & Creasy; Bunn, Hatch, Little & Bunn and Thomas W. Steed, Jr., for protestants, appellants.*

BOBBITT, J. Caro-Line, a North Carolina corporation, was

chartered on July 8, 1964. It was authorized by its charter to engage in, among other things, the transportation of freight, and to purchase, acquire, hold and sell property. The one hundred shares of stock authorized by its charter were issued to and are now owned by Leaseway.

The Commission by order of September 18, 1964, authorized the sale and transfer by Ed J. Thomas, d/b/a AAA Delivery Service of Greensboro, N. C., of his intrastate operating rights under Permit No. P-168 to Caro-Line. Exhibit A, attached to said order, defined "Contract Carrier Authority" under Permit No. P-168 as follows: "Transportation under individual bilateral contract with particular shippers of Group 1, general commodities, and Group 15, retail store delivery service, also manufactured furniture between factories within the State and stores and warehouses of Sears, Roebuck and Company within the State, over irregular routes, between all points and places in the State of North Carolina."

On May 10, 1965, Leaseway agreed to sell, and United agreed to buy (upon certain conditions), said one hundred shares (all) of the capital stock of Caro-Line.

G.S. 62-111(a) provides: "No franchise now existing or hereafter issued under the provisions of this chapter other than a franchise for motor carriers of passengers shall be sold, assigned, pledged or transferred, *nor shall control thereof be changed through stock transfer or otherwise,* or any rights thereunder leased, nor shall any merger or combination affecting any public utility be made through acquisition or control by stock purchase or otherwise, except after application to and written approval by the Commission, *which approval shall be given if justified by the public convenience and necessity.* Provided, that the above provisions shall not apply to regular trading in listed securities on recognized markets." (Our italics.)

Protestants assign as error the failure to find that the sale and transfer by Leaseway to United of the stock of Caro-Line (1) is contrary to the public interest and (2) is not justified by the public convenience and necessity.

Under the proposed sale and transfer, United does not acquire, in its own name and right, the title to Permit No. P-168. Upon consummation thereof, United, as sole stockholder, acquires corporate control of Caro-Line and its assets, including its presently existing franchise rights under Permit No. P-168. The extent and scope of Caro-Line's franchise rights are not affected by the fact that United rather than Leaseway is the owner of the stock of Caro-Line.

The balance sheet of United, as of December 31, 1964, shows assets of $29,321,918.00; liabilities of $17,504,993.00; capital stock and surplus of $11,816,925.00. It is wholly owned by United Parcel

Service of America, Inc., a Delaware corporation which is the parent of subsidiaries operating in various states from coast to coast. There is evidence that Leaseway, a holding company, has large transportation interests and "at the present time probably will have a gross of 165 million or something like that."

Unquestionably, the responsibility of Caro-Line, financially and otherwise, and Caro-Line's ability to exercise its franchise rights will not be adversely affected by the fact that United rather than Leaseway is the owner of its stock. The apprehension of protestants is that Caro-Line will undertake to exercise its franchise rights on a much larger and more varied scale, and in so doing act in competition with protestants and adversely affect their business. The record fails to show that operations by Caro-Line on a larger and more varied scale would be contrary to *the public interest* as distinguished from the interests of protestants.

Protestants contend the applicants (Leaseway and United) were required to show, and that they failed to show, that the proposed sale and transfer of Caro-Line's stock was justified by the public convenience and necessity. They call attention to the fact that the Public Utilities Act of 1963 (Session Laws of 1963, Chapter 1165) enacted G.S. 62-111(a) as quoted above; and that the corresponding provision (formerly codified as G.S. 62-121.26) of the Truck Act of 1947 (Session Laws of 1947, Chapter 1008) did not provide that the transfer of a "certificate or permit" be justified by the public convenience and necessity. In their brief, protestants contend in substance that G.S. 62-111(a) "required the Commission to consider similar elements upon a transfer of franchise authority as upon the granting of an application for *new* authority," (our italics) including "public need for the service, the service already provided by existing carriers, and the effect of the service provided by the transferee on the operations of existing carriers."

G.S. 62-262(e) provides: "If the application is for a certificate, the burden of proof shall be upon the applicant to show to the satisfaction of the Commission: (1) That public convenience and necessity require the proposed service in addition to existing authorized transportation service, and (2) (t)hat the applicant is fit, willing and able to properly perform the proposed service, and (3) (t)hat the applicant is solvent and financially able to furnish adequate service on a continuing basis." Protestants contend in substance that G.S. 62-262(e)(1) is applicable to the present factual situation. Careful consideration impels a different conclusion.

Under G.S. 62-262(e)(1), an applicant for *new* authority must show to the satisfaction of the Commission "(t)hat public convenience and necessity require the proposed service in addition to ex-

isting authorized transportation service." Factors for consideration by the Commission when passing upon such application include the service already provided by existing carriers and the effect of the *new* service on the operations of existing carriers. Here applicants did not seek and have not obtained any additional authority. The proposed transfer of Caro-Line's stock does not affect the extent of its presently existing franchise rights under Permit No. P-168. We are of opinion, and so decide, that G.S. 62-262(e)(1) is not applicable to the present factual situation. The Commission, based on substantial evidence, has made findings to the effect that Caro-Line, exercising franchise rights under Permit No. P-168, is now conducting an active operation, and that its ability to render service to the public within the limits of its franchise rights will not be adversely affected by the proposed transfer of its stock. In our opinion, and we so hold, the Commission's factual findings support its conclusion that the proposed sale and transfer of stock is justified by the "public convenience and necessity" within the meaning of this phrase as used in G.S. 62-111(a).

Protestants assign as error the failure to find that Caro-Line obtained Permit No. P-168 "for the purpose of transferring the same to another." G.S. 62-111(d) provides: "No person shall obtain a franchise for the purpose of transferring the same to another, and an offer of such transfer within one (1) year after the same was obtained shall be *prima facie* evidence that such certificate or permit was obtained for the purpose of sale."

Does G.S. 62-111(d) relate solely to the transfer of a franchise by the party to whom it is issued by the Commissioner? If not, is it applicable to a transfer of corporate stock effecting a change of control of a corporate holder of a franchise? Disposition of this appeal does not require determination of either of these questions. Assuming, without deciding, that G.S. 62-111(d) is applicable, protestants' said assignment of error is without merit. Findings of the Commission to the effect that Caro-Line did not in fact obtain said permit "for the purpose of transferring the same to another" is supported by substantial evidence.

It is well established that the Commission's findings of fact are conclusive and binding when supported by competent, material and substantial evidence in view of the entire record as submitted. G.S. 62-94(b)(5); *Utilities Commission v. Champion Papers, Inc.,* 259 N.C. 449, 454, 130 S.E. 2d 890, 894, and cases cited.

Protestants assign as error the failure to find that the franchise rights contained in Caro-Line's Permit No. P-168 "to the extent, if any, that such rights authorize the transportation of general commodities under contract to or from shippers other than Sears, Roe-

buck and Company are dormant." There is evidence the right exercised by Thomas under said permit consisted of operations under contract with Sears, Roebuck and Company. Thomas was authorized to transfer *his* rights under Permit No. P-168 to Caro-Line. There is evidence that, after said transfer, Caro-Line acquired additional equipment and that the rights exercised by Caro-Line under said permit consisted of operations under contracts with Sears, Roebuck and Company and General Tire Service. The Commission's decision involves only the sale and transfer of the stock of Caro-Line. Questions as to the extent and scope of Caro-Line's presently subsisting franchise rights under Permit No. P-168 were not presented and are not affected by the Commission's order.

As set forth in our preliminary statement, the application states United proposes to purchase from Leaseway all the capital stock of Caro-Line, the holder of the permit, "and thereafter cause Caro-Line Transportation, Inc., to merge into United Parcel Service, Inc." Exhibits relevant to consideration of such merger are attached to the application. Exhibit F is a nine-page statement entitled "Transferee's Experience in Transportation, and Nature of Service to be Provided," which states that United plans to provide specialized parcel delivery service "limited to packages weighing not in excess of 50 pounds each, and measuring not more than 108 inches in length and girth combined." Mr. Nesholm, its vice-president, testified United anticipated "entering contracts with between 500 and 1500 shippers." There is substance in protestants' contention that United, if it were to operate directly or indirectly in the manner and on the scale set forth in Exhibit F and in Mr. Nesholm's testimony, would take from protestants revenues they now derive from the transportation of such parcels.

The record does not show the application was amended by striking therefrom the reference to merger and exhibits pertinent thereto. Moreover, much of the evidence relates to the nature and scope of United's operations elsewhere and its intentions with reference to operations in North Carolina. Hence, the views expressed by Commissioner Eller to the effect the entire proposal set forth *in the application* should have been determined are understandable. However, at the hearing, the only question presented to and decided by the Commission was whether the proposed sale and transfer of Caro-Line's stock should be authorized.

At the outset of the hearing applicants, through their counsel, stated they were not seeking authority to merge Caro-Line into United "at this time." Commissioner Worthington, speaking for the Commission, states: "Accordingly, this matter has been heard and determined on the one question of whether approval should be given

as provided by G.S. 62-111, reading in part, 'nor shall control thereof be changed through stock transfer or otherwise,' to the transfer and sale of the stock of Caro-Line by Leaseway to United." The order of the Commission simply authorizes Leaseway to sell the capital stock of Caro-Line to United. Appellees (applicants), in their brief, state: "Simply stated, this case involved only an application for approval of the sale of the capital stock of Caro-Line, a corporation which holds a contract carrier permit issued by the North Carolina Utilities Commission." Again: "The Commission correctly held that the nature of the operations to be conducted by Caro-Line after the stock sale is not relevant in a proceeding requesting approval for the sale of the stock."

Since the Commission, at the request of appellees, restricted consideration and determination to one question, namely, whether such sale of corporate stock should be authorized, we treat as surplusage the portion of the application and exhibits relevant to a merger of Caro-Line with United. The Commission expressed no opinion, nor does this Court, as to the extent of Caro-Line's presently existing franchise rights under Permit No. P-168, or as to any merger that may be hereafter presented for consideration. Questions relating thereto, if raised in subsequent proceedings, will be considered *de novo* and without prejudice on account of the decision in the present proceeding.

All of protestants' assignments of error have been considered. In the main, they relate to matters considered and discussed in this opinion. None discloses prejudicial error.

With the foregoing explanation as to the sole question considered and determined by the Commission, by Judge Morris and by this Court, the *order* of Judge Morris, which affirmed the *order* of the Commission, is affirmed by this Court.

Affirmed.

LAKE, J., took no part in the consideration or decision of this case.