Utilities Comm. v. Telephone Co.

STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION; ROBERT MORGAN, ATTORNEY GENERAL; SECRETARY OF DEFENSE OF UNITED STATES; and NORTH CAROLINA MERCHANTS ASSOCIATION v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY

No. 7210UC183

(Filed 28 June 1972)

1. Telephone and Telegraph Companies § 1; Utilities Commission § 6— telephone rate case — failure to find replacement cost

In this telephone rate case, the Utilities Commission erred in failing to make and set forth in its order a finding as to the replacement cost of the utility's property used and useful in providing service to the public within this State.

2. Telephone and Telegraph Companies § 1; Utilities Commission § 6— telephone rate case — factors prescribed by statute — findings

The mere recital by the Utilities Commission that it has considered all of the factors prescribed by G.S. 62-133 in arriving at its ascertainment of "fair value" does not preclude the reviewing court from setting aside the finding of "fair value" where the record discloses that the Commission in fact failed to do so.

3. Telephone and Telegraph Companies § 1; Utilities Commission § 6— replacement cost — weight

Once the Utilities Commission makes its factual finding as to replacement cost, it is for the Commission, not the courts, to determine the relative weight to be given to that figure when the Commission considers it, together with all other relevant factors, in ascertaining the "fair value" rate base.

4. Telephone and Telegraph Companies § 1; Utilities Commission § 6— original cost — exclusion of land acquired for future use

In arriving at its finding as to original cost less depreciation of a telephone company's property, the Utilities Commission did not err in excluding the cost of land acquired by the telephone company for future use for new central offices or expansion of existing central offices, and for future construction of microwave towers.

5. Telephone and Telegraph Companies § 1; Utilities Commission § 6— rate base — exclusion of property held for future use — confiscation

The exclusion from the rate base of the value of property held by a public utility for future use does not amount to confiscation of the utility's property.

6. Telephone and Telegraph Companies § 1; Utilities Commission § 6— working capital — federal tax accruals

In this telephone rate case, there was competent, material and substantial evidence to support a finding by the Utilities Commission

that the utility had $2,842,739 of federal tax accruals available for use as working capital, and the Commission properly deducted such amount in its determination of the utility's cash working capital requirement.

**7. Telephone and Telegraph Companies § 1; Utilities Commission § 6— reasonable requirement for materials and supplies**

    Finding by the Utilities Commission that a telephone company's reasonable requirement for materials and supplies for its intrastate operations was $2,038,998 was *prima facie* just and reasonable, G.S. 62-94(e), and the evidence in the record did not overcome such statutory presumption.

APPEAL by Southern Bell Telephone and Telegraph Company from order of the North Carolina Utilities Commission in Docket No. P-55, Sub 650, dated 2 August 1971.

On 27 November 1970 Southern Bell Telephone and Telegraph Company (Southern Bell) filed application with the North Carolina Utilities Commission (Commission) seeking adjustments in its rates and charges for North Carolina intrastate service designed to produce $23,100,000 of additional annual gross revenue based on a test year ending 30 June 1970. On 11 December 1970 the Commission entered an order declaring the proceeding to be a general rate case under G.S. 62-133, suspending the effective date of the proposed rates, and setting the matter for hearing. On 23 February 1971 the Attorney General, pursuant to G.S. 62-20, filed notice of intervention on behalf of the using and consuming public. The North Carolina Merchants Association and the Department of Defense and all other Executive Agencies of the United States also appeared through counsel as protestant-intervenors. Public hearings were held in Raleigh on 25 May 1971 through 9 June 1971, at which witnesses presented by Southtern Bell, the Commission Staff, and the Attorney General were examined. On 2 August 1971 the Commission entered its order authorizing Southern Bell to increase its North Carolina intrastate telephone rates and charges to produce additional annual gross revenue not exceeding $13,295,087, based upon stations and operations as of the end of the test period, and approved specific rates and charges calculated by the Commission to produce such additional revenue. From this order, Southern Bell appealed, assigning errors.

*Joyner & Howison, by Robert C. Howison, Jr., John F. Beasley, and Harvey L. Cosper, with Drury B. Thompson and Jefferson Davis of Counsel, for Southern Bell Telephone and Telegraph Company, appellant.*

*Attorney General Robert Morgan by Assistant Attorney General I. Beverly Lake, Jr., for the Using and Consuming Public, appellee.*

*Commission Attorney Edward B. Hipp and Assistant Commission Attorney Maurice W. Horne for North Carolina Utilities Commission.*

PARKER, Judge.

[1] Appellant challenges the Commission's determination of the fair value of its property used and useful as of the end of the test period in providing telephone service to the public within this State. In this connection, Southern Bell presented evidence to show the original cost of such property less that portion of the cost which had been consumed by previous use recovered by depreciation expense, and in addition presented evidence to show the replacement cost of the property determined by trending depreciated original costs to current cost levels. The Commission made specific findings of fact as to original cost less depreciation, and found that this figure, when combined with the net working capital requirement as found by the Commission, was $321,068,542. However, the Commission made no finding as to replacement cost. In this it committed error.

[2] G.S. 62-133(b) requires the Commission, in the process of fixing rates fair both to the public utility and to the consumer, to commence by ascertaining the "fair value" of the public utility's property used and useful in providing service to the public within this State. In doing so, the statute directs the Commission to *consider* (1) "the reasonable original cost of the property" less depreciation, (2) the "replacement cost," which may be determined by trending such reasonable depreciated cost to current cost levels or by any other reasonable method, and (3) any other factors relevant to the present fair value of the property. In the present case the Commission found the "fair value" of appellant's property to be $353,000,000, a figure which was apparently arrived at by simply adding approximately 10% to $321,068,542, which the Commission had found to be the original cost less depreciation combined with net

working capital requirement. In its order, the Commission recited that it arrived at its finding of fair value, "considering the original cost less depreciation and considering replacement cost by trending original cost to current cost levels." However, the mere recital by the Commission that it has considered all of the factors prescribed by G.S. 62-133 in arriving at its ascertainment of "fair value" does not preclude the reviewing court from setting aside the finding of "fair value" where, as here, the record discloses that the Commission in fact failed to do so. *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705. In that case, Justice Lake, speaking for the Court, said:

> "It seems inescapable that the Commission cannot 'consider' or 'weigh' an element until it first determines what that element, itself, is. No doubt, the Commission, in the present case, formed an opinion satisfactory to itself, as to the amount of the 'replacement cost,' depreciated, of the properties included in its determination of the 'reasonable original cost,' since it said it had given consideration thereto. Unfortunately, though it set forth its finding of the 'net investment' [i.e., the reasonable original cost, less depreciation], it failed to set forth its finding of the 'replacement cost,' depreciated. . . . While the consideration or weight to be given 'replacement cost,' depreciated, in ascertaining 'fair value' rests in the sound discretion of the Commission, the reviewing court cannot satisfactorily determine whether the Commission considered or weighed this element at all, or merely gave it 'minimal consideration,' unless the Commission sets forth what it found this element to be. Though perhaps not indispensable to the validity of such finding, it would be proper, and certainly helpful to the reviewing court and to the parties, for the Commission to state, at least in summary, its reasons for not acquiescing in the figures suggested for this element by the respective expert witnesses.

> "Original cost, less depreciation, and replacement cost, less depreciation, are not ultimate facts but evidential facts only. The ultimate fact, in this segment of a rate case, is 'fair value.' However, G.S. 62-133 requires that these evidential facts be considered or weighed by the Commission in determining this ultimate fact. This is not to say that in no case may the Commission fix rates to be charged by a utility for its service without a determination of 'replace-

ment cost,' less depreciation. The utility, with the Commission's acquiescence, may offer evidence of original cost less depreciation, as its only evidence of 'fair value.' Proof of 'replacement cost' is exceedingly costly, and may be unduly burdensome, especially to a small utility company. However, where, as here, such evidence is introduced, the statute seems clearly to require that the Commission make, and set forth in its order, its findings as to both of these evidential facts, along with any 'other facts' considered by it. G.S. 62-79 requires that all orders of the Commission shall include findings upon all 'material issues of fact, law, or discretion presented in the record.' (Citations omitted.)

"We hold, therefore, that, when the record before the Commission presents the questions of the original cost, less depreciation, and the replacement cost, less depreciation, these are 'material issues of fact,' upon each of which the Commission must make its finding. When it does so, those findings are conclusive, if supported by substantial evidence in the record and not affected by an error of law. Having made such findings, so supported, it is for the Commission, not the reviewing court, to determine, in its expert discretion and by the use of 'balanced scales,' the relative weights to be given these several factors in ascertaining the ultimate fact of 'fair value.' "

In the present case, Southern Bell presented witnesses, qualified as experts, who testified that the replacement cost of its property used and useful in furnishing telephone service in North Carolina was $444,657,650. This figure was arrived at by trending depreciated original costs to current cost levels, and extensive data was furnished to support the computations. The record contains no other evidence as to replacement cost. The Commission's order referred to the testimony of Southern Bell's witnesses, but the mere recital of such testimony falls short of constituting a finding by the Commission that it accepted the witnesses' conclusion as to replacement cost as being a fact which it considered in ascertaining fair value. This seems all the more apparent in view of the contention made by the Commission's own attorneys in their brief on this appeal that Southern Bell's witnesses failed to follow statutory requirements in the method which they employed in trending original costs to current cost levels, and that this asserted

failure "is grounds for consideration in evaluating the weight to be given to Southern Bell's evidence of replacement cost based on such trended cost." Perhaps so, but this is all the more reason why the Commission should have made its own findings from the evidence as to replacement cost. Only then could it properly "consider" such cost, along with the other evidential facts which G.S. 62-133 requires it to consider, in finally making its determination as to "fair value." On the evidence in this record, it was error for the Commission to fail to make, and to set forth in its order, its finding as to replacement cost.

[3]  In their brief Southern Bell's counsel contend that under the facts of this case replacement cost should be given great weight and depreciated original cost should be given relatively little weight in the process of finally arriving at the "fair value" rate base. They point to the evidence of continuing inflation in our economy, which quickly makes original cost a figure of no more than historical interest, and stress that on the present record there are no factors of a negative nature, such as imprudent investment, functional obsolescence unaccounted for in the replacement cost, or a deteriorating or declining market for Southern Bell's property, which would tend to reduce the weight to be given replacement cost. While we find these arguments persuasive, they would be more properly addressed to the Commission than to a reviewing court. Once the Commission makes its factual finding as to replacement cost, it will be for the Commission, not for the courts, to determine the relative weight to be given that figure when the Commission considers it, together with all other relevant factors, in ascertaining the "fair value" rate base. While the Commission has the duty to weigh these evidences of "fair value" fairly and in "balanced scales," the Legislature designated the Commission, not the courts, to do the weighing of these elements, "and the reviewing court may not set aside the Commission's determination of 'fair value' merely because the court would have given the respective elements different weights and would, therefore, have arrived at a different 'fair value.'" *Utilities Comm. v. Telephone Co., supra.*

[4]  In arriving at its finding as to original cost less depreciation, the Commission excluded $347,622, being the cost of land acquired by Southern Bell for future use. This land consisted of twelve tracts owned by Southern Bell in North Carolina on

30 June 1970, seven of which had been purchased for new central offices or for space for expansion of existing central offices, and five of which had been purchased for construction of microwave towers. While it may have been entirely prudent for the utility's management to acquire these tracts prior to the time they were actually needed, and while savings in purchase price may have resulted thereby, we find no error in the Commission's exclusion of this item in its process of finding original cost. G.S. 62-133 (b) (1) clearly specifies that the rate base is to be "the fair value of the public utility's property *used and useful in providing the service rendered to the public* within this State," and G.S. 62-133 (c) directs that "[t]he public utility's property and its fair value *shall be determined as of the end of the test period* used in the hearing and the probable future revenues and expenses *shall be based on the plant and equipment in operation at that time.*" (Emphasis added.) The statute clearly contemplates that only that property of the utility which is devoted to the public use for which the utility has been granted a franchise is to be considered, both in arriving at the fair value rate base and in projecting probable future revenues and expenses. *Utilities Comm. v. Morgan, Attorney General,* 278 N.C. 235, 179 S.E. 2d 419.

[5]   We find no merit in appellant's contention that exclusion from the rate base of the value of property held by a public utility for future use amounts to confiscation of its property, as we know of no constitutional principle which requires a holding that a public utility be entitled to a return on that portion of its property not yet devoted to public use, nor do we perceive why present rate payers should be required to pay any part of the costs of the utility incurred solely for the benefit of future generations of rate payers. "In fact, the general doctrine is that the rate base is made up of values used in furnishing the service." *St. Joseph Stockyards Co. v. United States,* 11 F. Supp. 322, 329 (W.D. Mo.), affirmed, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033. Neither do we perceive any unfairness in this, since, assuming Southern Bell's contention is correct that earlier acquisitions of land result in economies in purchase price, any increment in value of lands so acquired occurring up to the time the land is placed in actual use by the utility would properly become includable in the "fair value" rate base at that time.

[6]   The Commission's order found as a fact, in Finding of Fact No. 5, "that there was available at the end of the test period $2,842,739 of Federal tax accruals available for use as working capital," and accordingly deducted this amount in its determination of Southern Bell's cash working capital requirement. Southern Bell attacks this finding as being unsupported by competent, material or substantial evidence in the record. However, on examination of the record we find that the testimony of the Commission's witness Peele, and particularly his exhibit filed as Schedule I, reveals that for the twelve-months period ending 30 June 1970 Southern Bell's books disclosed it had average Federal income tax accruals of $5,280,257 of which Schedule I showed $3,858,812 to be the intrastate portion. After making certain accounting and pro forma adjustments, this figure became $3,138,342, before giving effect to any increase in rates sought in this proceeding. In their brief, counsel for Southern Bell stated:

> "The tax accruals here in question are the monies set aside by the Company for payment of income taxes. Those monies are collected when bills are paid by the Company's subscribers and are not paid over to the government until the pertinent tax bill is due. *There is, of course, no prohibition against an interim use of these funds, and they are in fact used.*" (Emphasis added.)

We find in the testimony of the Commission's witness, Peele, particularly when viewed in the light of the admission contained in the brief of Southern Bell's counsel as above quoted, ample "competent, material and substantial evidence" to support the Commission's finding that Southern Bell did have $2,842,739 of tax accruals available for use as working capital. The fact that on cross-examination witness Peele admitted there were "items which the company has to pay in advance of receipt of revenue," and that in reaching his conclusions he "did not give any consideration to any items which the company must pay in advance of receipt of revenues," did not render his testimony incompetent but merely went to the weight to be accorded it by the Commission. It would appear that the Commission did take into account the matters brought out on cross-examination, since it found the amount available for working capital purposes on account of the tax accruals to be substantially less than witness Peele's testimony and exhibits would indicate. The Commission's finding, being supported by

competent, material and substantial evidence in view of the entire record as submitted, is conclusive and binding on this appeal, G.S. 62-94(b)(5), *Utilities Commission v. Coach Co.,* 269 N.C. 717, 153 S.E. 2d 461, and the funds resulting from the tax accruals here in question were properly held to be available to Southern Bell for use by it as working capital.

"When, in fixing rates which will produce a fair return on the investment of a utility, it is made to appear it has on hand continuously a large sum of money it is using as working capital and to pay current bills for materials and supplies, that is a fact which must be taken into consideration." *Utilities Com. v. State* and *Utilities Com. v. Telegraph Co.,* 239 N.C. 333, 80 S.E. 2d 133. "The rate base should include working capital supplied by the company but not funds supplied by its customers." *Utilities Comm. v. Morgan, Attorney General,* 277 N.C. 255, 177 S.E. 2d 405.

[7]  In its Finding of Fact No. 5 the Commission also found that Southern Bell's "reasonable materials and supplies requirement for the operation of intrastate business in North Carolina" was $2,038,998. In this, we find no error. True, Southern Bell's witness, Pickle, its Division Accounting Manager for North Carolina, did testify that actual investment in the intrastate portion of materials and supplies at the end of the test period was $2,535,951, and that "[t]his stock of material and supplies is necessary in order that good service may be continued and impairment and interruption of service minimized." However, the Commission was not bound to accept the opinion of the company's witness as to the amount of materials and supplies necessary in order to maintain good service, but was free to make its own determination as to the amount reasonably required for that purpose. Witness Peele testified that the Commission Staff had determined that "the average amount of money invested in materials and supplies (in terms of 1970 dollars) per station in service . . . between June 30, 1967, and June 30, 1970, was $2.141," while "the average investment per station during the test period was $2.35," and that the Commission Staff maintained that "the difference between the $2.141 and $2.35 represents investment per station in excess of a normal year." The Commission's determination as to the amount of materials and supplies reasonably required must be considered on this appeal to be "prima facie just and reason-

able," G.S. 62-94(e), and the evidence in this record does not overcome that statutory presumption.

The exclusion of the value of property held for future use, the inclusion of tax accruals as available for working capital, and the determination of the amount reasonably required for materials and supplies, above discussed, are material in this case only as bearing upon the Commission's factual findings as to the original cost less depreciation of Southern Bell's property and its net working capital requirement. The resulting combined figure, which the Commission found to be $321,068,542, is itself no more than an evidentiary fact to be considered by the Commission in finding the "fair value" rate base, which is the ultimate fact to be found by the Commission at this stage of a general rate case. We find no error in the process by which the Commission determined this evidential figure to be $321,-068,542. However, for the failure above noted to find the additional evidential figure of replacement cost, this proceeding must be remanded.

Southern Bell also contends that the rate of return of 7.4% fixed by the Commission on its finding of fair value of Southern Bell's property was arbitrary and capricious and resulted in an unconstitutional taking of its property. In view of the fact that the appropriate rate of return can be determined only after the fair value rate base is correctly ascertained, we do not on this appeal pass on the merits of Southern Bell's contentions that the Commission committed error in fixing the rate of return at 7.4%.

The order of the Utilities Commission is reversed and this matter is remanded to the Commission for further consideration in accordance with the principles set forth above and in accordance with applicable guidelines set forth in the opinion of our Supreme Court in the recently decided case of *Utilities Comm. v. Telephone Co., supra.* Such further consideration shall be either upon the present record or after such further hearing as the Commission shall deem proper.

Reversed and remanded.

Chief Judge MALLARD and Judge MORRIS concur.