STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, OLD DOMINION FREIGHT LINE, INC., AND HARPER TRUCKING COMPANY, INC., APPLICANTS v. ESTES EXPRESS LINES, FEDERAL MOTOR EXPRESS, FREDRICKSON MOTOR EXPRESS CORPORATION, OVERNIGHT TRANSPORTATION COMPANY AND THURSTON MOTOR LINES, PROTESTANTS

No. 7610UC820

(Filed 4 May 1977)

1. Carriers § 2.10— suspension of common carrier authority

The Utilities Commission was authorized by G.S. 62-30 to suspend a trucking company's irregular route common carrier authority pending final determination of an application for transfer of the authority, and the suspension prevented the loss of such authority through duplication or merger when the company merged with another company which held a similar irregular route authority.

2. Carriers § 3— regular and irregular route authorities — transfer of irregular route authority

Determination by the Utilities Commission that a trucking company's regular and irregular route common carrier authorities were distinct and that a transfer of the irregular route authority will not result in the creation of two route authorities out of one was supported by the trucking company's evidence that there are a significant number of points and towns that could not be served by its regular route authority, and that the regular and irregular route authorities differ in the nature of services they provide as well as the areas served in that regular route authority provides services to the same points, over specified roads, and on a regular basis, while irregular route authority provides service to broader territories over the most convenient roads on a call and demand basis.

3. Carriers § 3— transfer of authority — public convenience and necessity

A finding by the Utilities Commission supported by competent evidence that a trucking company was actively engaged in providing transportation services under its common carrier irregular route authority was sufficient to establish that a transfer of the authority is "justified by the public convenience and necessity."

4. Carriers § 3— transfer of authority — public interest

The transfer of a trucking company's common carrier irregular route authority was not contrary to "the public interest" where the transferor acquired the irregular route authority of another company through merger; there were thus two irregular route carriers prior to and after the transfer; the record does not show that the transferee will be a more competitive carrier; and the Utilities Commission found upon supporting evidence that the transferee has the business experience and financial ability to render adequate and reliable service under the franchise.

APPEAL by protestants from order of the North Carolina Utilities Commission issued on 29 June 1976. Heard in the Court of Appeals 16 March 1977.

This proceeding was initiated by an application filed with the North Carolina Utilities Commission (commission) on 30 March 1976 by which Old Dominion Freight Lines, Inc. (Old Dominion), and Harper Trucking Company, Inc. (Harper), seek approval of the transfer of a portion of Old Dominion's common carrier franchise authority, certificate no. C-97. The certificate authorizes: transportation of general commodities over irregular routes from points within a 35 mile radius of Greensboro to twelve towns outside that radius; from Charlotte to points within a radius of 35 miles of Greensboro; and irregular routes from Roanoke Rapids to points within 35 miles of Greensboro. The certificate also authorizes the transportation of general commodities over 46 regular routes within the same geographical area encompassed by the irregular route authority. Old Dominion seeks to transfer its irregular route authority contained in the certificate to Harper.

Prior to the filing of the application to transfer the irregular route authority, Old Dominion and Barnes Truck Lines, Inc. (Barnes), filed a joint application with the commission seeking approval of a merger of the two companies. This acquisition and merger was required by the Interstate Commerce Commission to be consummated by 4 May 1976. Barnes held irregular route authority to transport general commodities between all points

and places on and east of U. S. Highway 21. Upon the merger with Barnes, Old Dominion would therefore hold duplicative irregular route operating authority. To avoid cancellation of its irregular route operating authority upon its merger, Old Dominion, along with Harper, filed a joint petition with the commission on 29 April 1976 seeking a suspension of Old Dominion's irregular route authority pending final determination by the commission of the application for approval of the sale of the authority to Harper.

On 30 April 1976 Estes Express Lines, Federal Motor Express, Fredrickson Motor Express Corporation, Overnite Transportation Company and Thurston Motor Lines (protestants) filed a "protest and motion for intervention" asking that the application for transfer of operating authority be denied. On 3 May 1976 the commission granted the applicants' suspension petition and ordered that Old Dominion suspend operations under its irregular route authority pending final determination of the application for transfer of the irregular route authority. A hearing was held before the commission on the transfer application and on 29 June 1976 the commission approved the transfer of the irregular route authority granted by certificate no. C-97 from Old Dominion to Harper.

The commission made findings of fact which include: Old Dominion was actively engaged in transportation under the authority sought to be transferred until the temporary suspension of such authority by the commission on 3 May 1976. There are a number of points that Old Dominion can reach pursuant to its irregular route authority only and not by way of its regular route authority. Harper has the requisite experience and financial ability to render adequate and reliable service under the franchise to be transferred. The transfer is in the public interest and will not unlawfully affect the service presently being offered the public by other public utilities.

The commission concluded that: its order granting a temporary suspension of operations prevented the loss through merger or duplication of the rights Old Dominion is now seeking to transfer to Harper; Old Dominion's irregular route authority is distinct from its regular route authority; and if the transfer is not allowed the public will be without a carrier to fill Barnes' absence.

From the order approving a transfer of that portion of the certificate authorizing irregular route authority, protestants appealed.

*Bailey, Dixon, Wooten, McDonald & Fountain, by Ralph McDonald, for applicant appellees.*

*Allen, Steed & Allen, P.A., by Thomas W. Steed, Jr., for protestants.*

BRITT, Judge.

Is the order of the commission approving the transfer of common carrier franchise authority under G.S. 62-111 erroneous as a matter of law and unsupported by competent, material and substantial evidence? We answer in the negative.

The transfer of carrier operating authority is governed by G.S. 62-111 which includes the following applicable provisions:

"(a) No franchise now existing or hereafter issued under the provisions of this Chapter other than a franchise for motor carriers of passengers shall be sold, assigned, pledged or transferred, nor shall control thereof be changed through stock transfer or otherwise, or any rights thereunder leased, nor shall any merger or combination affecting any public utility be made through acquisition or control by stock purchase or otherwise, except after application to and written approval by the Commission, which approval shall be given *if justified by the public convenience and necessity.* Provided, that the above provisions shall not apply to regular trading in listed securities on recognized markets. (Emphasis added.)

\*          \*          \*

"(e) The Commission shall approve applications for transfer of motor carrier franchises made under this section upon finding that said sale, assignment, pledge, transfer, change of control, lease, merger, or combination is in the public interest, will not adversely affect the service to the public under said franchise, will not unlawfully affect the service to the public by other public utilities, that the person acquiring said franchise or control thereof is fit, willing and able to perform such service to the public under said franchise, and that service under said franchise has

been continuously offered to the public up to time of filing said application or in lieu thereof that any suspension of service exceeding 30 days has been approved by the Commission as provided in G.S. 62-112(b) (5)."

Protestants contend that the transfer of the irregular route authority from Old Dominion to Harper is not "justified by the public convenience and necessity" and that the transfer will "unlawfully affect the service to the public by other public utilities."

In *Utilities Comm. v. Petroleum Carriers,* 7 N.C. App. 408, 413-14, 173 S.E. 2d 25, 28 (1970), relying on *Utilities Commission v. Coach Co.,* 269 N.C. 717, 153 S.E. 2d 461 (1967), we find: " ' . . . the policy of the State, as declared in the Public Utilities Act of 1963, * * * clearly favors transfers of actively operated motor freight carriers certificates without unreasonable restraint. A policy following protestant's position would diminish the value of existing motor freight franchises and deprive the holders thereof of valuable rights. . . . ' "

[1] Protestants argue that upon the acquisition of the operating rights of Barnes by Old Dominion, the irregular route authority of Barnes merged and unified with the previously held irregular authority of Old Dominion to the extent that the operating authorities duplicated each other; thereupon, Old Dominion holds only one active certificate containing irregular route operating authority; and that any transfer by Old Dominion to Harper of its irregular route authority would necessarily leave Old Dominion without any irregular route authority.

The applicants contend that any merger of duplicate operating authority upon Old Dominion's merger with Barnes was properly avoided by the commission's order of 3 May 1976 authorizing suspension of its operations under the irregular route authority pending final approval of the application for transfer to Harper. They cite G.S. 62-112(b) which provides in part that "Any franchise may be suspended or revoked, *in whole or in part,* in the discretion of the Commission, upon application of the holder thereof . . . . " (Emphasis ours.) Applicants argue that under the commission's general powers set forth in G.S. 62-30, and in the quoted provision, the commission was fully authorized to suspend the irregular route authority of Old Dominion upon its acquisition of Barnes thereby

preventing any unification or merger of operating authority. We think these contentions are correct.

The statute expressly provides that any franchise may be suspended in whole or in part. Here, that part of the franchise certificate providing irregular route authority was suspended by the commission after a full disclosure of all circumstances. We think the commission exercised its lawful discretion in granting the temporary suspension.

Protestants contend that the commission's conclusion that the temporary suspension of the irregular route operating authority prevented any duplication or merger of operating authority was erroneous as a matter of law. They argue that under G.S. 62-112(b)(5) any "suspension of authorized operations" is merely a suspension of *services* by a carrier under its franchise authority. Apparently, protestants reason that in this case there was only a suspension of services under the franchise authority rather than a suspension of the franchise operating authority itself. Protestants further argue that since only service was suspended the two irregular route authorities were duplicative and therefore merged. We find these arguments unpersuasive.

When the irregular route operating authority portion of Old Dominion's franchise certificate was suspended, any service provided under this part of the certificate naturally was suspended. We hold that the commission did not err in concluding that the portion of the franchise certificate providing for irregular route authority was suspended.

[2]   Old Dominion's irregular route authority which it seeks to transfer contains the following restriction:

"EXCEPTION: Irregular route operations are not authorized which would duplicate regular route operations."

The commission's Rule R2-30 also provides that:

"DUPLICATION OF REGULAR AND IRREGULAR AUTHORITY. No carrier authorized to operate both as a regular route common carrier of property and as an irregular route common carrier of property shall transport any shipment under its irregular route authority which it is authorized to transport under its regular route authority."

Under these restrictions, protestants contend that Old Dominion has no irregular route authority for general commodities over all routes and between all points which can be served by its regular route authority. They argue that Old Dominion's regular and irregular route authority overlap to such an extent that any transportation services under its irregular route authority are negligible. Therefore, protestants contend that by the transfer of its irregular route authority, Old Dominion will be creating two route authorities out of one; that Old Dominion will continue to provide the same services under its continued regular route authority while Harper will be a new competitor under an irregular route authority that has not hereinbefore existed. We find no merit in these contentions.

The commission found "[t]hat while the Transferor holds both regular and irregular route authority in the same general territory, there are a number of points that the Transferor can only reach pursuant to its irregular route authority, sought herein to be transferred, and not by way of its regular route authority." The commission concluded that the transferor's irregular route authority is distinct from its regular route authority; that they are of a different nature; and that if the transfer is not allowed the public will be minus a carrier to fill Barnes' absence. We think the commission's findings are supported by competent, material and substantial evidence and are therefore binding on appeal. *Utilities Commission v. Coach Co.*, 269 N.C. 717, 153 S.E. 2d 461 (1967).

There was sufficient evidence presented by Old Dominion that there are a significant number of points and towns that could not be served by its regular route authority. The applicants also assert, and we agree, that the evidence indicates that the regular and irregular route authorities differ in the nature of services they provide as well as the areas served in that regular route authority provides service to the "same points, over specified roads, on a regular basis," while irregular route authority provides for service to "broader territories over the most convenient roads, on a call and demand basis." We think the evidence presented is sufficient to support the commission's findings and its conclusion that the regular and irregular route authorities were distinct.

[3] Protestants also contend that the present transfer is not "justified by the public convenience and necessity" as required

by G.S. 62-111(a). They rely on the case of *Utilities Comm. v. Petroleum Carriers, supra,* where this court approved the language of the commission in *In Re Comer Transport Service,* N.C.U.C. Docket No. T-821, Sub. 2, in stating that:

> "The Commission in effect interpreted the criteria 'if justified by the public convenience and necessity' in G.S. 62-111(a) to be a statutory basis for the test of dormancy. Where the authority has been abandoned or 'dormant,' the Commission has denied applications for transfer because approval would in effect be the granting of a new authority without satisfying the new authority test of public need set out in G.S. 62-262(e)(1) . . . . Thus, the Commission in *Comer* held that 'the statutory requirement referred to [G.S. 62-111(a)] is satisfied by a showing that the authority has been and is being actively applied in satisfaction of the public need theretofore found.' "

Protestants argue that there has been no active operation by Old Dominion under its irregular route authority for the reason that the irregular route authority is duplicated by regular authority.

If protestants' contentions are correct and Old Dominion's irregular route authority had been dormant, the present transfer would be improper under G.S. 62-111(a) in that it must meet the test required by G.S. 62-262(e)(1) for the granting of a new authority. However, the commission found: "That the transferor [Old Dominion] was actively and continuously engaged in transportation under the authority sought to be transferred up through the time of the Commission's May 3, 1976, Order authorizing a temporary suspension of operations." This finding is supported by competent and material evidence and is sufficient to establish that the transfer is "justified by the public convenience and necessity." The record and exhibits indicate that Old Dominion was actively engaging in providing transportation services under its common carrier irregular route authority.

[4]  Finally, protestants contend that the challenged transfer will create a new service in Harper, thereby creating a new competitor adversely affecting the existing carriers. This contention is without merit.

Prior to the transfer, there were two irregular route carriers: Old Dominion and Barnes. After the transfer, there

are still two irregular route carriers: Old Dominion and Harper. It is conceded that Old Dominion will now hold a more extensive irregular route authority, that which was previously held by Barnes. However, we fail to see how the transfer of the irregular route authority to Harper is contrary to "the public interest." The commission found that Harper "has the business experience, the financial ability and is otherwise fit, willing and able to acquire the authority sought from the Transferor and to properly perform and render adequate and reliable service under the franchise on a continuing basis." The commission also found that the transfer is in the public interest; that it will not unlawfully affect the service to the public; and that it will not unlawfully affect the service to the public which is presently being provided by other utilities.

These findings are supported by substantial, competent and material evidence and are sufficient to meet the requirements of G.S. 62-111. A new authority has not been created as contended by protestants, but rather there has been a transfer of a pre-existing active authority to a different competitor. As stated in *Utilities Comm. v. Petroleum Carriers, supra* at 416, 173 S.E. 2d at 30:

> " 'There is no public policy condemning competition as such in the field of public utilities; the public policy only condemns unfair or destructive competition.' The possibility that a transfer of authority to a more competitive carrier will adversely affect existing carriers does not make such a transfer contrary to the 'public interest' as a matter of law. In G.S. 62-111(e) the General Assembly has empowered the Utilities Commission to find in a proper case that transfer to a more actively competitive carrier might *not* be 'in the public interest.' In the instant case, however, the record fails to show that operations by M & M would, as Bobbitt, J., expressed it in *Coach Co., supra,* 'be contrary to *the public interest* as distinguished from the interests of protestants.' "

The record does not show that the transferee, Harper, will be a more competitive carrier nor does it show that the transfer is contrary to the public interest. We hold that there is competent, material, and substantial evidence to support the findings of the commission.

The order appealed from is

Affirmed.

Judges HEDRICK and CLARK concur.