STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, HAYWOOD-ATKINS TRUCKING, INC., AND HARPER TRUCKING, INC., APPLICANTS v. ESTES EXPRESS LINES, PROTESTANT

No. 7610UC819

(Filed 4 May 1977)

1. Carriers § 3— common carrier authority — dormancy — application to transfer authority

Where the issue of dormancy under G.S. 62-112(c) is raised in a proceeding to transfer a common carrier franchise authority and the Utilities Commission finds that the franchise is not dormant, it must then determine if the criteria of G.S. 62-111 for approval of the transfer have been met; if the Commission finds that the franchise is dormant, the application for transfer must be denied because approval would in effect constitute the granting of a new authority without satisfying the new authority test and other requirements of G.S. 62-262(e).

2. Carriers § 2.10— common carrier authority — prima facie showing of dormancy — consideration of other factors

Under G.S. 62-112(c) the failure to perform any transportation for compensation under the authority of a franchise for a period of 30 days is *prima facie* evidence that the franchise is dormant, and such evidence is sufficient to justify but not compel a finding that the franchise is dormant; upon such *prima facie* showing, the Utilities Commission may then consider other listed factors affecting the performance of such services and may find that evidence of one or more of those factors rebuts the *prima facie* showing of dormancy.

3. Carriers § 2.10— common. carrier authority — prima facie showing of dormancy — sufficiency of rebutting evidence

Although there was *prima facie* evidence that a general commodities common carrier franchise was dormant because of the carrier's failure to haul under its franchise for a period of 30 consecutive days, evidence that the carrier continuously advertised its services, was ready, willing and able to haul both exempt and non-exempt commodities under its franchise and charged published tariff rates in hauling both exempt and non-exempt commodities was sufficient to rebut the *prima facie* evidence of dormancy and to support the refusal of the Utilities Commission to find that the franchise was dormant.

APPEAL by protestant Estes Express Lines from Order of North Carolina Utilities Commission entered 29 June 1976. Heard in the Court of Appeals 16 March 1977.

On 22 March 1976, Harper Trucking Company, Inc., (hereafter referred to as "transferee") and Haywood-Atkins Trucking, Inc., (hereafter referred to as "transferor") jointly filed an application with the Utilities Commission, under G.S. 62-111, seeking approval of the transfer of general commodities common carrier franchise authority.

The operating authority sought to be transferred was North Carolina Common Carrier Certificate No. C-73 authorizing the transportation of general commodities (excluding leaf tobacco and accessories), in truck loads, over irregular routes specified as follows:

"(1) Between points and places in Wake County,

"(2) From points and places in Wake County to points and places in North Carolina in and east of the counties of Stokes, Forsyth, Guilford, Randolph, Montgomery and Richmond,

"(3) From points and places in and east of the counties named in paragraph 2 to points and places in Wake County."

On 3 May 1976 Estes Express Lines (hereafter referred to as "protestant") filed a protest and motion for intervention, claiming that since the operating authority of transferor was dormant it was not the proper subject of transfer.

The evidence for transferor and transferee tended to show that transferor had held Certificate No. C-73 since 1946 or 1947. Transferor owns one tractor and four trailers and also leases one tractor. Transferor advertises its services in the yellow pages of the Raleigh Telephone Directory in a Jaycee newspaper, and in a law enforcement publication. It maintained a tariff and evidence of cargo and liability insurance on file with the Commission. It had never refused service to a shipper whom it was authorized to serve. For the period from 25 November 1975 through 31 May 1976 it received $28,000.00 in revenue from its trucking operations, but of this total $232.00 in revenue was derived from the transportation of non-exempt commodities (salt), and the remainder from the transportation of

exempt commodities (tobacco and lumber). In each instance the transferor charged its published tariff rate. In the event the proposed transfer was approved, transferor intended to remain in business for the transportation of exempt commodities.

The evidence for protestant tended to show that its total gross revenue for North Carolina operations during the year of 1975 was 3.2 million dollars, that its projected annual revenue from the type of shipments covered by the certificate in question would be $64,872.87, that protestant is not now operating to its capacity in the state, and that if the Commission were to grant the transfer sought, the protestant would lose approximately 10% to 12% of its total revenue.

The Commission ordered the approval of the transfer, making a finding under G.S. 62-111(e) that "such service has been continually offered to the public," but making no explicit finding on the issue raised under G.S. 62-112(c) of dormancy of the franchise. Protestant appealed.

*Allen, Steed and Allen, P.A. by Thomas W. Steed, Jr., and D. James Jones, Jr., for protestant appellant.*

*Bailey, Dixon, Wooten, McDonald & Fountain by Ralph McDonald for applicant appellees.*

CLARK, Judge.

This appeal presents the question of whether the Utilities Commission erred in failing to find that the common carrier franchise of transferor was dormant under G.S. 62-112(c) and in approving the transfer of the franchise.

The criteria for approval of the transfer of a common carrier franchise are set out in G.S. 62-111. But in the proceeding before us the protestant in its protest and motion for intervention confined its attack on the proposed transfer to the question of dormancy under G.S. 62-112(c), which provides:

"The failure of a common carrier or contract carrier of passengers or property by motor vehicles to perform any transportation for compensation under the authority of its certificate or permit for a period of 30 consecutive days shall be *prima facie* evidence that said franchise is dormant and the public convenience and necessity is no longer served by such common carrier certificate or that the needs of a

Utilities Comm. v. Express Lines

contract shipper are no longer served by such a contract carrier. Upon finding after notice and hearing that no such service has been performed for a period of 30 days the Commission is *authorized* to find that the franchise is dormant and to cancel the certificate or permit of such common or contract carrier. The Commission *in its discretion may give consideration* in such finding to other factors affecting the performance of such service, including seasonal requirements of the passengers or commodities authorized to be transported, *the efforts of the carrier to make its services known to the public* or to its contract shipper, the equipment and other facilities maintained by the carrier for performance of such service, and the means by which such carrier holds itself out to perform such service. A proceeding may be brought under this section by the Commission on its own motion or upon the complaint of any shipper or any other carrier. The franchise of a motor carrier may be cancelled under the provisions of this section in any proceeding to sell or transfer or otherwise change control of said franchise brought under the provisions of G.S. 62-111, upon finding of dormancy as provided in this section. . . ." (Emphasis added.)

Protestant takes the position that transferor's franchise certificate was dormant and that, therefore, the test of "public convenience and necessity," which G.S. 62-262(e)(1) requires of a new applicant for franchise authority, must be met. In *Utilities Commission v. Coach Co.,* 269 N.C. 717, 153 S.E. 2d 461 (1967), the court held that the showing of public need required by G.S. 62-262(e)(1) is not applicable in a transfer proceeding under G.S. 62-111, and in effect supported the ruling of the Utilities Commission that "the statutory requirement referred to [G.S. 62-111(a)] is satisfied by a showing that the authority has been and is being actively applied in satisfaction of the public need theretofore found." *In re Comer Transport Service, N.C.U.C.* 266, 270 (1965); *accord, Utilities Commission v. Petroleum Carriers,* 7 N.C. App. 408, 173 S.E. 2d 25 (1970).

[1] Where the issue of dormancy under G.S. 62-112(c) has been raised, if the Commission finds that the franchise is not dormant, it must then determine if the criteria required by G.S. 62-111 for approval of the transfer have been met. If the Commission finds that the franchise is dormant under G.S.

62-112(c) the application for transfer must be denied because approval would in effect constitute the granting of a new franchise without satisfying the new authority test and other requirements of G.S. 62-262(e). Cf. *Utilities Commission v. Coach Co., supra.*

We have no precedent to guide us in interpreting the dormancy provisions of G.S. 62-112(c). In *Utilities Commission v. Petroleum Carriers, supra,* there was evidence that during 1963-1966 the transferor did not solicit business under its franchise, but that transferor did actively solicit business and haul under its franchise in 1967 and 1968, the last hauling season before the hearing. The Commission approved the transfer of the franchise, and the court affirmed the ruling. However, in that case the protest was not based on the dormancy issue under G.S. 62-112(c) but rather on the requirement of G.S. 62-111(e) that for approval of a franchise transfer the Commission must find "that service under said franchise has been continuously offered to the public. . . ."

[2]   Under G.S. 62-112(c) the failure to perform any transportation for compensation under the authority of the franchise for a period of 30 days is *prima facie* evidence that the franchise is dormant. Such evidence is sufficient to justify but not to compel a finding that the franchise is dormant. See 2 Stansbury, N. C. Evidence § 203 (Brandis Rev. 1973). Upon such *prima facie* showing the Commission in its discretion *may* then consider other factors affecting the performance of such services, and G.S. 62-112(c) lists factors which may be considered. If the Commission in its discretion considers other factors it may find that the evidence relating to one or more of these factors rebuts the *prima facie* evidence of dormancy and that the franchise is not dormant. And if the evidence relating to one or more of these factors, as found by the Commission, is competent, material, and substantial, the finding will not be disturbed on appeal. G.S. 62-94(b)(5).

[3]   In the proceeding before us there was *prima facie* evidence of dormancy under G.S. 62-112(c) because of the failure of transferor to haul under its franchise for a period of 30 consecutive days, and the Commission was authorized to so find and to cancel the franchise. But the Commission was not required to do so. It had discretionary authority, and did consider other factors, including the statutory listed factor of "the efforts

of the carrier to make its services known to the public." The evidence that transferor continuously advertised its services, that it was ready, willing, and able to haul both exempt and non-exempt commodities under its franchise, and that it charged published tariff rates in hauling both exempt and non-exempt commodities, was competent, material and substantial, and is sufficient to rebut the *prima facie* evidence of dormancy and to support the consideration by the Commission of one or more of the "other factors" listed in G.S. 62-112(c).

Although the Commission did not make an explicit finding on the issue of dormancy of the franchise under G.S. 62-112(c), nonetheless we conclude that the evidence, findings, and conclusions support the refusal of the Commission to find that the franchise was dormant.

The order of the Utilities Commission is

Affirmed.

Judges BRITT and HEDRICK concur.